In the

# United States Court of Appeals
## For the Seventh Circuit

No. 03-1997

DAVID BROWN,

*Plaintiff-Appellant,*

*v.*

TIMOTHY BUDZ, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 CV 5516—**James B. Zagel**, *Judge.*

ARGUED SEPTEMBER 22, 2004—DECIDED FEBRUARY 16, 2005

Before COFFEY, WILLIAMS, and SYKES, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* David Brown, a resident of the Illinois Department of Human Services' Sexually Violent Persons and Detention Facility (Facility) was severely beaten several times by a fellow resident. Brown alleged that Facility employees failed to protect him in violation of his due process rights by allowing that fellow resident with allegedly violent propensities to roam Facility common areas unsupervised. He also alleged that several Facility employees violated his right to equal protection by intentionally treating him and other Caucasian residents differently from similarly situated African-American residents. The district court dismissed Brown's complaint for failure to state a claim, but

because we find that the allegations in Brown's complaint are sufficient to state several claims on both counts, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

As this appeal calls for an evaluation of whether plaintiff's complaint fails to state a claim, we "take the plaintiff's factual allegations as true and draw all reasonable inferences in his favor." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) (citing *Strasburger v. Bd. of Educ.*, 143 F.3d 351, 359 (7th Cir. 1998)). Brown, a Caucasian, is currently and has been a resident at the Facility in Joliet, Illinois. He has been awaiting a civil commitment trial under the Illinois Sexually Violent Persons Commitment Act, 725 ILCS 207/1, *et seq*. since December 1999.

On the evening of May 4, 2001, Brown was playing cards in the unsupervised dayroom, an area of the Facility where residents are allowed to watch television and enjoy other leisure activities. Another resident, referred to here as "G.B.," an African-American resident who had attacked other Caucasian Facility residents on other occasions, was also present in the dayroom. G.B. attacked and severely beat Brown several times in succession, causing Brown to suffer physical injuries.

The defendants are employees of the Facility who had been primarily responsible for Brown's care and custody at the time of the attack. Defendants-appellees Tyler, Smith, Clark, and Pomier were Security Therapy Aides (STAs) at the Facility; defendant-appellee Timothy Budz was the Director of the Facility; defendant-appellee Robert Glotz was the Facility's Security Director; and defendant-appellee Cy Hopkins was a Facility Internal Affairs Investigator (together, State Defendants). Defendant-appellee Dr. Raymond Wood was the Facility Clinical

Director. All of these defendants personally knew of G.B.'s propensity for violence and history of attacking Caucasian residents before the assault on Brown, and were aware of a pattern of attacks by African-American residents in general against Caucasian residents at the Facility. Despite this knowledge, the defendants allegedly failed to take adequate measures to prevent such attacks from taking place.

In Count I of his Second Amended Complaint, Brown asserts a claim under 42 U.S.C. § 1983 alleging that Facility officials failed to protect him in violation of his due process rights. Count II asserts a § 1983 claim alleging that STAs Tyler, Smith, Clark, and Pomier, as well as Investigator Hopkins (together, Equal Protection Defendants), violated his right to equal protection by intentionally treating him differently from similarly situated African-American residents in their conduct of protecting residents from attack, punishing residents for attacks, investigating attacks, and enforcing Facility policies. Defendants filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which the district court granted. Brown appeals.

## II. ANALYSIS

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that he or she was (1) deprived of a federal right, privilege, or immunity (2) by any person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 638 (1980) (citing 42 U.S.C. § 1983). There is no dispute that Brown's complaint adequately alleges that each defendant acted under color of state law. What is in dispute is whether Brown has sufficiently alleged a deprivation of a federal right—in particular, violations of his rights to due process and equal protection. Because the district court found Brown's allegations insufficient in this regard, dismissing his complaint pursuant to Rule 12(b)(6), this court reviews

de novo the district court's decision. *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 521 (7th Cir. 2003).

Whether a complaint sufficiently states a claim turns on whether it meets the general rules of pleading a claim for relief. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing the pleader is entitled to relief." This "short and plain statement" requires a plaintiff to allege no more than "the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002) (citing *Beanstalk Group, Inc. v. AM Gen. Corp.*, 283 F.3d 856, 863 (7th Cir. 2002)). "In evaluating whether a plaintiff's complaint fails to state a claim, a court must take the plaintiff's factual allegations as true and draw all reasonable inferences in his favor." *DeWalt*, 224 F.3d at 612 (citing *Strasburger*, 143 F.3d at 359). Furthermore, "[a] complaint should be dismissed for failure to state a claim only if no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.* (internal quotations omitted). Indeed, "if it is possible to hypothesize a set of facts, consistent with the complaint, that would entitle the plaintiff to relief, dismissal under Rule 12(b)(6) is inappropriate." *Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001) (quoting *Veazey v. Communication & Cable of Chicago, Inc.*, 194 F.3d 850, 854 (7th Cir. 1999)).

## A.  Failure to Protect

The first count of Brown's complaint alleges that defendants failed to protect him from harm. Such claims are often rooted in the Eighth Amendment's Cruel and Unusual Punishment Clause, which imposes upon prison officials the duty to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832

(1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). In particular, this duty requires prison officials "to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal quotations omitted). To state a failure to protect claim, a plaintiff-inmate must allege that (1) "he is incarcerated under conditions posing a substantial risk of serious harm," and (2) defendant-officials acted with "deliberate indifference" to that risk. *Id.* at 834.

Defendant Dr. Wood contends that any decisions he made with respect to Brown in his capacity as a mental health professional must be analyzed under the "professional judgment" standard, which provides for imposition of liability "only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982). However, no "accepted professional judgment, practice, or standards" would allow a professional to act in deliberate indifference to a substantial risk of serious harm to a detainee in his or her care. While the ultimate success of Brown's claims against Dr. Wood may in fact turn on whether the doctor's acts and omissions were in keeping with "professional judgment," Brown at this stage of the litigation need only allege that Dr. Wood was deliberately indifferent to a substantial risk of serious harm in order to state a failure to protect claim.

Director Budz, Security Director Glotz, and Internal Affairs Investigator Hopkins also argue that a different standard should be employed to assess Brown's claims against them. In *Weiss v. Cooley*, 230 F.3d 1027, 1033 (7th Cir. 2000), this court upheld the dismissal of a failure to protect claim against so-called "policymaking" or "high-level" defendants where the complaint alleged merely a failure to implement *adequate* policies and procedures, rather than a failure to implement *any* policies or proce-

dures whatsoever. Unlike the case at bar, however, the policymaking defendants in *Weiss* were alleged to have had knowledge of only general risks of violence at their prison, as opposed to particular knowledge of a specific risk posed by, or to, a particular detainee. *Id.* Here, Budz, Glotz, and Hopkins are alleged to have been personally aware of the specific threat G.B. posed to Caucasian residents (particularly by virtue of their averred knowledge of G.B.'s alleged serial attacks on Caucasians), and to have failed to take adequate measures to neutralize that particular risk. A failure to protect claim may sound against even a "high-level" official so long as the averred risk is specific to a detainee, and not a mere general risk of violence. Furthermore, this discussion presumes that the duties of Budz, Glotz, and Hopkins are limited to high-level policymaking—an inappropriate presumption considering that the allegations of Brown's complaint— unlike those in *Weiss*—do not so constrain this court's understanding of each defendant's employment responsibilities. Accordingly, the sufficiency of Brown's failure to protect claims against defendants Budz, Glotz, and Hopkins, too, will be assessed solely under *Farmer*'s two-prong analysis.

With this framework in mind, we turn to our analysis. In the instant case, Brown was not a prisoner at the time of the alleged assault, but rather in state custody against his will, awaiting a civil commitment trial under the Sexually Violent Persons Act. Not yet convicted of a crime, Brown's status was comparable to that of a pretrial detainee. It is important to note this distinction, as prisoners and pretrial detainees derive their constitutional rights from different sources:

> The Eighth Amendment's prohibition on cruel and unusual punishment gives rise to the constitutional rights of a convicted state prisoner. A pretrial detainee's constitutional rights are distinct from a prisoner's

> rights because the State cannot punish a pretrial detainee. Thus, the source of the pretrial detainee's rights is the Fourteenth Amendment's Due Process Clause . . . .

*Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 259 n.1 (7th Cir. 1996) (citations omitted). Although Brown's Section 1983 failure to protect claim arises under the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment, *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002) (citing *Frake v. City of Chicago*, 210 F.3d 779, 781 (7th Cir. 2000)), there is "little practical difference between the two standards," *Weiss*, 230 F.3d at 1032. As we stated in *Higgins v. Correctional Medical Services of Illinois*, "the due process rights of a pre-trial detainee are at least as great as the Eighth Amendment protection available to a convicted prisoner," 178 F.3d 508, 511 (7th Cir. 1999) (quoting *Cole*, 94 F.3d at 259); therefore, "§ 1983 claims brought under the Fourteenth Amendment are to be analyzed under the Eighth Amendment test." *Henderson v. Sheahan*, 196 F.3d 839, 844 n.2 (7th Cir. 1999). Accordingly, we analyze Brown's failure to protect claim under *Farmer*'s two-prong test.

### 1.   Substantial Risk of Serious Harm

The first prong of a failure to protect claim—considered the objective prong—requires a plaintiff to allege that "he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. To satisfy this prong, a plaintiff must allege not only that he or she experienced, or was exposed to, a serious harm, but also that there was a substantial risk beforehand that that serious harm might actually occur.

As to the allegation of serious harm, the Supreme Court has made clear that "the deprivation alleged must be objectively, sufficiently serious," amounting to a "denial of

the minimal civilized measure of life's necessities." *Id.* (citations and internal quotations omitted). In other words, "[t]he question under the Eighth Amendment is whether [custodial] officials . . . exposed a [detainee] to a sufficiently substantial 'risk of *serious damage to his future health.*'" *Id.* at 843 (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)) (emphasis added). Under this standard, a beating suffered at the hands of a fellow detainee, such as that alleged by Brown, clearly constitutes serious harm, as "[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Here, Brown alleges that he was "severely beaten" by G.B.—a fellow detainee—"several times in succession causing [him] to suffer physical injuries." Complaint ¶ 15. Indeed, the defendants do not contest, and the district court did not question, the sufficiency of these allegations of serious harm.

Rather, defendants argue that Brown has failed to allege that the risk of G.B. attacking him was substantial. Due to a relative dearth of case law on point, it has for some time been unclear "[a]t what point a risk of inmate assault becomes sufficiently substantial" for purposes of a failure to protect claim. *Farmer*, 511 U.S. at 834 n.3. Defendants rightly note, however, that this court, at least on one occasion in the context of resolving a sexual harassment claim brought under Title IX, has read "substantial risk" to mean "risks so great that they are almost certain to materialize if nothing is done." *Delgado v. Stegall*, 367 F.3d 668, 672 (7th Cir. 2004) (citing, *inter alia*, *Billman v. Ind. Dept. of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995)).

While *Delgado* suggests that the substantial risk standard is very high, a closer examination of our failure to protect cases reveals that it is not insurmountable. In *Billman v. Indiana Department of Corrections*—a case upon which the *Delgado* court expressly relied in formulating

its definition of "substantial risk"—we suggested that a "substantial risk" could exist where prison officials place a detainee in a cell in which "they know that there is a cobra there or at least that there is a high probability of a cobra there." *Billman*, 56 F.3d at 788. Expanding upon this hypothetical, we found that, similarly, the assignment of a detainee without warning to a cell with an HIV positive inmate with a known "propensity" of raping his cell mates would also constitute a substantial risk. *Id.* In other cases, we have noted that "it is possible to state a claim on the basis of a guard's knowledge that a particular inmate poses a heightened risk of assault to the plaintiff." *Weiss*, 230 F.3d at 1032.

When our cases speak of a "substantial risk" that makes a failure to take steps against it actionable under the Eighth or Fourteenth Amendment, they also have in mind risks attributable to detainees with known "propensities" of violence toward a particular individual or class of individuals; to "highly probable" attacks; and to particular detainees who pose a "heightened risk of assault to the plaintiff." Drawn from the particular pronouncements upon which the *Delgado* court formulated its general standard, these, too, are "risks so great that they are almost certain to materialize if nothing is done," and thus are themselves sufficient to establish a "substantial risk."

Here Brown has alleged that G.B. had both a known history and propensity of violently attacking Caucasians (Complaint ¶¶ 16, 18), and was allowed unsupervised access to the dayroom where Caucasian residents, including Brown, would congregate (Complaint ¶¶ 13-15). When circumstances conspire to find a serial assailant with unsupervised access to his target prey, a heightened risk of assault does inescapably arise. Having alleged such exposure to a heightened risk of assault, posed by a specific individual with allegedly known violent propensities, Brown

has alleged a sufficiently substantial risk.

Defendants nonetheless maintain that the alleged risk posed by G.B. could not have been substantial because Brown had been at the facility for seventeen months without incident involving G.B., and because the alleged attacks by G.B. were not "so common and uncontrolled" as to suggest that he was almost certain to attack any Caucasian resident that he would encounter. Here defendants misconstrue, as they do throughout their briefs, the proper purview of the court on a motion to dismiss under Rule 12(b)(6). Defendants invite this court to assume not only facts that the complaint does not allege, but indeed facts that are wholly inconsistent with its allegations. We decline the invitation. At this early stage of the proceedings, we take plaintiff's factual allegations as true, draw all reasonable inferences in his favor, and will hypothesize any set of facts consistent with those allegations to avoid dismissal. *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000); *Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001).

Therefore it is of no consequence that Brown has lived at the Facility for seventeen months without incident, for a court could reasonably hypothesize that the day of the alleged assault was in fact the first time G.B. and Brown were in a room together. Or perhaps it was the first time G.B. and Brown were in an *unsupervised* room together. Perhaps G.B. had not lived at the Facility those same seventeen months prior to the alleged assault. Indeed, it would be wholly consistent with Brown's complaint if all of G.B.'s alleged attacks—both on Brown and others—took place on G.B.'s very first day of residency.

Which leads to the deficiency in defendants' challenge to the alleged frequency of G.B.'s attacks. Defendants argue that the G.B.'s attacks on Caucasian residents, as alleged by Brown, were not "so common and uncontrolled" as to suggest that "he is almost certain to attack any Caucasian

resident with whom he comes into contact." State Defs. Br. at 19. However, nothing in the complaint compels such a conclusion. The complaint does not approximate the frequency of G.B.'s alleged attacks on Caucasian residents whatsoever. In this regard, the complaint tells us only that "G.B. has attacked and/or beaten other Caucasian residents" (plural, indicating at least more than one), as well as Brown himself. Complaint ¶ 16. So we can safely assume for purposes of this motion that G.B. has attacked at least three residents in his time at the Facility. But we could readily hypothesize attacks on more—even many more—and at least enough to render G.B. a substantial risk. Indeed, even if we chose not to hypothesize more than two victims prior to the attack on Brown, we could still find a frequency of attack that would pose a substantial risk—particularly if both attacks occurred on the same day, the same week, or perhaps even the same month.

Nor must Brown allege that the threat posed by G.B. was "so common and uncontrolled that some potential victims dared not sleep [but] instead . . . would leave their beds and spend the night clinging to the bars nearest the guards' station." *Farmer*, 511 U.S. at 843 (quoting *Hutto v. Finney*, 437 U.S. 678, 681-82 n.3 (1978)). Such conditions inducing pervasive detainee terror illustrate merely a sufficient, but not necessary, basis for finding substantial risk. *Id.* (hypothesizing a threat so severe as to compel inmate hyper-vigilance merely as an "example" of a sufficiently substantial risk). Furthermore, and contrary to defendants' assertions, the gravity of the alleged risk was not compromised by the fact that Brown had not suffered or feared an attack by G.B. prior to the assault alleged here. Indeed, this court has found substantial risk even when the potential and ultimate victims had been wholly oblivious to the impending threat, particularly in cases of improper cell assignments. *See, e.g.*, *Weiss v. Cooley*, 230 F.3d 1027 (7th Cir. 2000); *Billman v. Ind. Dept. of Corr.*, 56 F.3d 785 (7th Cir.

1995); *Zarnes v. Rhodes*, 64 F.3d 285 (7th Cir. 1995).

Finally, defendants insist that the alleged risk posed by G.B. could not have been substantial because it was no more than a generalized risk of violence experienced by all Caucasian residents in a facility predominantly populated by Caucasians. "It is certainly true that a deliberate indifference claim cannot be predicated merely on knowledge of general risks of violence in [a detention facility]." *Weiss*, 230 F.3d at 1032. However, a risk is not rendered general merely because it is not personal to plaintiff. Indeed, "it does not matter . . . whether a prisoner faces an excessive risk of attack for reasons personal to him or *because all prisoners in his situation face such a risk.*" *Farmer,* 511 U.S. at 843 (emphasis added). Brown has alleged a risk posed by a specific assailant, with known propensities of violence toward a specific class of persons (Caucasian residents), who was left in his presence unsupervised. These allegations do not detail a mere general risk of violence in the facility, but rather a particular—albeit non-personal—threat to Caucasian residents.

Again, we assess here only whether the allegations of Brown's complaint are sufficient to state a claim and withstand challenge under Rule 12(b)(6). Brown has alleged that an individual with an allegedly known propensity toward attacking Caucasians was allowed unsupervised access to a Facility general room in which Brown, a Caucasian, was lounging. In this room, this assailant with alleged violent propensities was allegedly able to beat Brown several times in succession. By alleging such exposure to a heightened risk of assault to Caucasians, Brown has sufficiently averred substantial risk for purposes of a failure to protect claim.

### 2.  Deliberate Indifference

To meet the second, subjective prong of a failure to

protect claim, a plaintiff must establish his custodians' deliberate indifference to that substantial risk of serious harm. As the Court stated in *Farmer*, "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which an inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." 511 U.S. at 838.

### a. Knowledge of Risk

Brown has alleged that "defendants, through their personal knowledge, positions at the DHS Facility and/or access to information about its residents including G.B., had knowledge that G.B. posed a direct threat to other residents of the DHS Facility given G.B.'s propensity for violence and/or prior attacks and/or beatings of other residents at the DHS Facility." Complaint ¶ 16. He further alleges that the defendants "possess[ed] actual knowledge that G.B. posed a direct threat to the health and/or safety of residents of the DHS Facility, including, but not limited to Plaintiff." Complaint ¶ 21. Defendants argue that these allegations fail to aver defendants' knowledge of a substantial risk of serious harm.

The district court agreed, holding that Brown "has made no *showing* other than claims limited to mere information and belief that defendants knew or had knowledge of a substantial risk or pattern in which G.B. attacked Caucasians without provocation," and that "[a]bsent further information, plaintiff has failed to *show* that G.B.'s prior behavior put defendants on notice that plaintiff was at risk of attack." *Brown v. Budz*, No. 01 C 5516, Order Granting Defendants' Motion to Dismiss (N.D. Ill. Feb. 20, 2003) (emphasis added).

Brown's allegations, however, cannot be faulted for their

reliance on "information and belief." "Where pleadings concern matters peculiarly within the knowledge of the defendants, conclusory pleading on 'information and belief' should be liberally viewed." *Tankersley v. Albright*, 514 F.2d 956, 964 n.16 (7th Cir. 1975) (internal quotations omitted). Such is the case here, where absent an event offering definitive insight into the facility officials' minds—such as Brown informing the officials that he feared an attack by G.B. prior to the alleged assault, or the officials forewarning Brown of such a threat—Brown cannot be faulted for not pleading on the basis of personal knowledge. What the defendants knew of the risk posed by G.B. and when they knew of it is a matter peculiarly reserved to their memories and files. Accordingly, Brown properly averred on the basis "information and belief."

Furthermore, the district court's findings misstate plaintiff's burden in going forward. As discussed above, to survive a motion to dismiss under Rule 12(b)(6), the plaintiff does not have to "show" anything; he need only allege. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002) ("The federal rules require (with irrelevant exceptions) only that the complaint state a claim, not that it plead the facts that if true would establish (subject to any defenses) that the claim was valid.") (citing *Nance v. Vieregge*, 147 F.3d 589, 590-91 (7th Cir. 1998)). Nonetheless, the district court's order, as well as defendants' arguments both in their briefs and at oral argument, are replete with references to what Brown failed to "show" or "establish." Such use of the language of summary judgment in disposing of a motion under Rule 12(b)(6) is incompatible with the liberal notice pleading requirements of Rule 8. At this stage of the litigation, we are concerned not with what plaintiff did or did not show, but rather with what plaintiff did or did not allege.

In particular, Defendants argue that they cannot be liable for a failure to protect Brown if they did not know that

Brown *specifically* was at risk of attack from G.B. Here they reprise a variation of their generalized risk argument, this time arguing that the generalized nature of the risk compromises not the gravity of the threat, but rather the mental capacity for indifference. Without knowledge of a particularized risk, defendants contend, indifference to a substantial risk of serious harm cannot be deliberate, because one cannot be *deliberately* indifferent to a person's safety without first knowing the identity of the person whose safety one is being indifferent to. Accordingly, defendants argue that dismissal was proper here because Brown failed to allege a risk that was specific to him, averring instead a threat experienced by all of the Facility's Caucasian residents on an equal basis—put differently, a generalized threat, insufficient to state the requisite, subjectively deliberate indifference to Brown's safety.

Defendants rightly note that typical deliberate indifference claims assert that a defendant-custodian failed to take protective action after a plaintiff-detainee complained of a feared threat posed by rival gang members or a specific person. *See, e.g.*, *Butera v. Cottey*, 285 F.3d 601 (7th Cir. 2002); *Lewis v. Richards*, 107 F.3d 549 (7th Cir. 1997); *Haley v. Gross*, 86 F.3d 630 (7th Cir. 1996); *Jelinek v. Greer*, 90 F.3d 242 (7th Cir. 1996). Another common fact pattern found in our failure to protect cases finds deliberate indifference arising out of improper cell assignments, where the defendant custodian places an unwitting detainee in a cell with another detainee whom the custodian knows to have certain violent propensities. *See, e.g.*, *Weiss v. Cooley*, 230 F.3d 1027 (7th Cir. 2000); *Billman v. Ind. Dept. of Corr.*, 56 F.3d 785 (7th Cir. 1995); *Zarnes v. Rhodes*, 64 F.3d 285 (7th Cir. 1995). In these types of cases, the victim and assailant are readily identifiable, and the custodian's deliberate indifference is based upon knowledge of a clearly particularized risk.

While we have often found deliberate indifference where custodians know of threats to a *specific detainee* posed by a *specific source*, we have not been constrained by this fact pattern. It is well settled that deliberate indifference may be found though the specific identity of the ultimate assailant is not known in advance of assault. *Farmer*, 511 U.S. at 843 (noting that a custodial official cannot "escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault," and that "it does not matter whether the risk comes from a single source or multiple sources"); *Weiss*, 230 F.3d at 1032 ("Sometimes the heightened risk of which the guards were aware comes about because of their knowledge of the victim's characteristics, not the assailant's."); *Langston v. Peters*, 100 F.3d 1235, 1238-39 (7th Cir. 1996) (recognizing that deliberate indifference can be based upon jailer's knowledge of inmates likely to be targeted by gangs); *Swofford v. Mandrell*, 969 F.2d 547, 549-50 (7th Cir. 1992) (noting that the placement of a plaintiff who had been charged with sexual assault in a cell with ten other inmates who had been charged with other crimes supports conclusion that defendant custodian acted with deliberate indifference); *Walsh v. Mellas*, 837 F.2d 789, 796 (7th Cir. 1988) (upholding finding of deliberate indifference where "plaintiff was known to be . . . a targeted inmate and therefore a member of an identifiable group of prisoners for whom risk of assault was a serious problem"). Indeed, the converse is also true. As the Sixth Circuit has held, "where a specific individual poses a risk to a large class of inmates, that risk can also support a finding of liability *even where the particular prisoner at risk is not known in advance.*" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Curry v. Scott*, 249 F.3d 493, 507-08 (6th Cir. 2001) (emphasis added)). Ultimately, as we noted above, "it does not matter . . . whether a prisoner faces an

excessive risk of attack for reasons personal to him or *because all prisoners in his situation face such a risk.*" *Farmer*, 511 U.S. at 843 (emphasis added). As these cases reveal, deliberate indifference can be predicated upon knowledge of a victim's particular vulnerability (though the identity of the ultimate assailant not known in advance of attack), or, in the alternative, an assailant's predatory nature (though the identity of the ultimate victim not known in advance of attack).

Thus a deliberate indifference claim may be predicated on custodial officers' knowledge that a specific individual poses a heightened risk of assault to even a large class of detainees—notwithstanding the officials' failure or inability to comprehend in advance the particular identity of this individual's ultimate victim. Accordingly, we reject defendants' suggestions that deliberate indifference requires either the threatened detainee to advise his custodians of a pending threat, or a custodial officer to know in advance the identity of the particular plaintiff at risk. Deliberate indifference may also be predicated on the custodians' knowledge of an assailant's predatory nature. Therefore, Brown's complaint, by asserting that the defendants "had knowledge" of G.B.'s violent propensities as evidenced by his alleged history of attacking Caucasians, sufficiently alleges that defendants were aware of an excessive risk posed to Brown.

### b.  Disregards Risk

Of course, mere awareness of the facts giving rise to a substantial risk is not enough to establish deliberate indifference. To survive dismissal, Brown's complaint must also allege that the defendants disregarded that risk. Toward this end, Brown alleges that defendants failed to take adequate measures to extinguish the threat posed by G.B.; failed to adopt or implement adequate policies or

procedures "to segregate violent persons such as G.B. from other residents after learning of their violent propensities"; failed to supervise G.B. adequately; failed to train STAs adequately, or to notify them of G.B.'s violent propensities; and failed to adopt or implement policies to provide STAs information about residents who pose a direct threat to the safety and security of other residents. Complaint ¶ 21. Such acts and omissions, given the knowledge of the alleged risk posed by G.B., sufficiently state a failure to protect claim.

## B.  Equal Protection

Brown next asserts a violation of his constitutional right to equal protection. "To establish a prima facie case of discrimination under the equal protection clause, [plaintiff is] required to show that he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class." *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993) (internal quotations omitted). In his complaint, Brown alleges that the defendant STAs and Investigator Hopkins (together, the Equal Protection Defendants) "intentionally treated [him and other Caucasian residents] differently from similarly situated African-American residents of the DHS Facility without any rational basis for doing so, by, among other things": (1) failing to protect them from attacks by African-American residents; (2) failing to punish African-American residents for such attacks; (3) failing to investigate GB's attack on Brown and other Caucasians; and (4) failing to enforce policies consistently. Complaint ¶ 21.

The district court dismissed Brown's Section 1983 equal protection claim, finding that "none of plaintiff's allegations show defendants intentionally treated plaintiff differently from similarly situated African-American residents at the

DHS Facility" and that "plaintiff's disparate treatment claim cannot merely rest upon conclusory statements absent some factual allegations." *Brown v. Budz*, No. 01 C 5516, Order Granting Defendants' Motion to Dismiss (N.D. Ill. Feb. 20, 2003) (citing *Jackson v. E.J. Brach Corp.*, 176 F.3d 971 (7th Cir. 1999) ("A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6).")). Again, we note the liberal requirements of notice pleading under Rule 8, particularly with regard to Equal Protection claims,[1] and that, contrary to the district court's and defendants' repeated choice of vocabulary, plaintiff need not "show" anything to survive a motion under Rule 12(b)(6)—he need only allege. *See, supra*, at 14-15. And Brown has sufficiently alleged an equal protection violation here.

Indeed, the Equal Protection Defendants concede that Brown's claim that the STA defendants intentionally discriminated against him by *failing to protect* him from attack by African-American residents, as well as his claim that Hopkins intentionally discriminated against him by *failing to investigate* G.B.'s attack on him, are both sufficient to withstand a Rule 12(b)(6) challenge. These concessions are based on defendants' acknowledgment that such alleged failures would, if true, have been in breach of each employees' respective duties at the facility. The district court's dismissal of these two claims is reversed.

The Equal Protection Defendants argue, however, that the dismissal of the claims against Investigator Hopkins for failure to supervise, against the STA defendants for failure to investigate, and against both Hopkins and the STA

---

[1] Indeed, this court has held that an allegation as simple as "'I was turned down a job because of my race' is all a complaint has to say" to plead sufficiently race discrimination in violation of the Equal Protection clause. *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998).

defendants for failure to punish should be affirmed because in each circumstance it would be "unreasonable to assume" that the defendants engaged in such misconduct considering the nature of their duties. As the argument goes, investigators don't supervise, supervisors don't investigate, and neither punishes. However, this argument inappropriately attempts to introduce facts outside of the complaint—namely, the purported parameters of each defendant's duties—in an effort to show they could not have engaged in the alleged conduct. This effort runs afoul of Rule 12(b)(6), as Brown should at least be given the opportunity through discovery to determine the extent of each defendants duties of employment, and whether each defendant's alleged failure to act was in contravention of those respective duties and, ultimately, Brown's equal protection rights. Permitting these claims to proceed is consistent with our ruling in *Billman v. Indiana Department of Corrections*, which held that a plaintiff's "initial inability to identify the injurers is not by itself a proper ground for the dismissal of the suit. [If such were the case,] [d]ismissal would gratuitously prevent him from using the tools of pretrial discovery to discover the defendants' identity." 56 F.3d at 789. Though here the defendants have been identified, their roles have not been. Brown's allegations suffice to entitle him to discover the contours of those roles, for, at the Rule 12(b)(6) stage, it is not unreasonable for the court to draw the inference that STAs might in some capacity be responsible for investigating resident-on-resident attacks, or that investigators are to some degree responsible for supervising residents. *See Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001).

As for Brown's final equal protection claim—that defendants discriminated against him by failing to enforce policies—the Equal Protection Defendants argue that the complaint's failure to identify the policies involved warranted the claim's dismissal because it failed to orient

defendants to the basic nature of the alleged injury. However, as noted above, Rule 8 does not require fact pleading by design, leaving these allegations sufficient to state a claim as well.

## C.  Official Immunity

To survive dismissal, Brown's claims must also be sculpted to conform with the constraints of the Eleventh Amendment. "[T]he Eleventh Amendment . . . bars federal jurisdiction over suits against state officials acting in their official capacities when the state is the real party in interest." *MCI Telecomms. Corp. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 336-37 (7th Cir. 2000). However, this immunity is not absolute, as "[u]nder the longstanding doctrine of *Ex Parte Young*, a private party can sue a state officer in his or her official capacity to enjoin prospective action that would violate federal law." *Dean Foods Co. v. Brancel*, 187 F.3d 609, 613 (7th Cir. 1999) (citing *Ex Parte Young*, 209 U.S. 123, 159-60 (1908)). *Ex Parte Young* does not reach, however, claims for retroactive damages to be paid from a state treasury, which the Eleventh Amendment generally continues to preclude. *Edelman v. Jordan*, 415 U.S. 651 (1974).

Here Brown sues all defendants in their individual and official capacities. Complaint ¶¶ 4-12. As a remedy, he seeks a declaratory judgment finding that defendants' conduct was in violation of his due process and equal protection rights; an injunction requiring the defendants and the Facility to implement a plan to avoid the reoccurrence of such constitutional violations; costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and monetary damages. To the extent that Brown seeks monetary damages from defendants acting in their official capacity, those claims for retroactive relief are dismissed as they are barred

by the Eleventh Amendment. Defendants in their individual capacities, however, remain subject to Brown's claims for monetary damages.

In addition, defendants take issue with the portion of Brown's failure to protect claim based on their alleged failure to train STAs adequately. Indeed, "failure to train claims are usually maintained against municipalities, not against individuals, and, in the Eighth Amendment context, such claims may only be maintained against a municipality." *Sanville*, 266 F.3d at 739-40. Accordingly, Brown's failure to train claims against defendants in their *individual* capacities were also properly dismissed.

### III.  CONCLUSION

For the reasons stated above, we AFFIRM the district court's dismissal of Brown's due process and equal protection claims for monetary damages brought against defendants in their official capacities, and its dismissal of his due process failure to train claim against defendants in their individual capacities. We REVERSE the dismissal of Brown's due process and equal protection claims seeking declaratory relief, injunctive relief, costs, and reasonable attorneys' fees from defendants in both their individual and official capacities, and the dismissal of Brown's due process and equal protection claims for monetary damages brought against defendants in their individual capacities. This case is REMANDED for further proceedings consistent with this opinion.

A true Copy:

      Teste:

                                  _____
                                  *Clerk of the United States Court of*
                                     *Appeals for the Seventh Circuit*