NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 8, 2007[*]
Decided March 12, 2007

**Before**

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 05-2024

| | |
|---|---|
| DALE MILLER,<br>    *Plaintiff-Appellant,* | Appeal from the United States District Court for the Central District of Illinois |
|     *v.* | No. 04-1016 |
| BRUCE R. FISHER, et al.,<br>    *Defendants-Appellees.* | Harold A. Baker,<br>*Judge.* |

**O R D E R**

Dale Miller, an Illinois prisoner, sued several guards and officials at the Illinois River Correctional Center under 42 U.S.C. § 1983 for failing to protect him from an attack by another inmate. The district court granted the defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

a claim, and Miller appeals. Because Miller's complaint adequately alleges a claim under the Eighth Amendment that the defendants were deliberately indifferent to his safety, we vacate and remand.

The allegations in Miller's complaint stem from an argument between him and another inmate, Frederick Sherman, that occurred in May 2002. According to the complaint, Sherman had posted a note on a prison bulletin board saying Miller was a homosexual. An angry Miller went to Sherman's cell to confront him, and the two got into a fight. Two prison guards, defendants Sharleen Liverett and Robert Feger, considered it necessary to separate them. Sherman threatened that he was "gonna get" Miller. Later on the same day, Miller was brought into the Internal Affairs office for a meeting with the prison warden, two assistant wardens, and the major of security, all of whom are defendants in this case. Miller discussed the fight with them and told them of Sherman's threats.

Two days after this meeting, Miller was placed in segregation for his role in the fight. While walking to the segregation unit, he asked the guard escorting him to place him in a particular wing of the unit. The guard responded that this was not possible as Sherman was on that wing and there was a "Keep Separate From" (KSF) order in effect to keep him separated from Sherman. A few days after being placed in segregation, Miller informed two more defendants, Anita Slaughter and Bruce Fisher, of Sherman's threats when he appeared before them for a disciplinary hearing for his role in the fight.

Miller was released from segregation in July. A few weeks after his release, and notwithstanding the earlier KSF order to keep Miller and Sherman separated, Sherman was placed in the same unit of the prison as Miller, in a cell only two doors away. Two days later Sherman attacked Miller in the unit's dayroom, striking him with a blunt object, knocking him to the floor, and beating him until he bled profusely and sustained a laceration, swelling, dizziness, and permanent eye damage. Miller claims that, based on these events, the defendants were deliberately indifferent to his safety thus violating his rights under the Eighth Amendment. He also claims that two of the defendants, Fisher (who served on the disciplinary committee) and guard Linda Stanbaugh, conspired to violate his rights by helping Sherman to attack him.

The district court granted the defendants' motion to dismiss Miller's complaint. It decided that Miller's deliberate-indifference claim was foreclosed because the complaint acknowledged that the defendants had broken up the fight between him and Sherman and issued the order to keep the two separated. The court characterized these acknowledged actions as inconsistent with a claim of deliberate indifference.  On appeal Miller argues generally that the district court erred in dismissing this claim because his complaint sufficiently alleged that the defendants were deliberately indifferent when they allowed Sherman to be housed

adjacent to him after they became aware that Sherman had threatened to harm him and understood that the two required separation.

We review the district court's dismissal under Rule 12(b)(6) *de novo*. *Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001). Dismissal is only appropriate if, accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff, the plaintiff could not prove any facts, consistent with the complaint, entitling him to relief. *Id.* To succeed in his deliberate indifference claim Miller must show that he faced a "substantial risk of serious harm" and that the defendants knew of and disregarded that risk. *See Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994); *Fisher v. Lovejoy*, 414 F.3d 659, 662 (7th Cir. 2005).

Miller's complaint sufficiently alleges all of the elements of a deliberate-indifference claim. First, it alleges that he was at substantial risk of serious harm because Sherman promised to "get" him. Such an attack by a fellow inmate, which is what Sherman promised, is recognized as a "serious harm," *Brown v. Budz*, 398 F.3d 904, 910–11 (7th Cir. 2005). In addition, Sherman delivered his threat to "get" Miller after already having fought once with him, and a "substantial risk" of harm includes a risk of attack from a person with "known propensities of violence toward a particular individual." *Id.* at 911 (internal citation and quotation marks omitted). Second, the complaint also adequately alleges that all of the defendants were aware of this substantial risk in at least one of three ways: they witnessed both the initial fight and Sherman's threats against Miller afterwards, they learned of those threats from Miller, or they knew of the KSF order, itself a statement of the risk. The one exception is Stanbaugh, the only defendant who was not involved in either the initial fight between Miller and Sherman or the investigation of the fight. However, Miller alleges that Stanbaugh made cell assignments after reviewing inmates' files to determine a "suitable placement." It is reasonable to infer from this allegation that by reviewing Sherman's file, Stanbaugh learned about the fight, threats and KSF order when she decided on his cell assignment and nonetheless chose to place him in the same unit as Miller.

The district court reasoned that the defendants did not ignore the risk to Miller because the complaint itself states that they ordered Miller and Sherman to be kept separate. Even if this allegation that the defendants issued a KSF order is true, it does not foreclose Miller's claim – and indeed supports it – for he also alleges that the defendants disregarded that order and placed Sherman in the same unit as him in spite of the known risk Sherman presented to him.

The defendants argue that Miller never alleges that any specific defendant (with the exception of Stanbaugh) decided to place Sherman in his unit. But as long as he has not disclaimed their involvement, Miller need not pinpoint each defendant's exact role with precision at this stage in the litigation particularly when

he is not in a position to know the defendants' individual responsibility for making cell assignments. *See Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788–89 (7th Cir. 1995) (vacating dismissal of prisoner complaint where prisoner did not name particular defendants who assigned him to cell knowing that cellmate was HIV-positive and had propensity to commit rapes); *see also Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555–57 (7th Cir. 1996) (dismissal premature when pro se prisoner sufficiently alleged Eighth Amendment claim against some government officials but only named sheriff's department and not individuals as defendant). Miller has alleged generally that the defendants were involved in placing Sherman in his unit despite knowing the substantial risk that Sherman posed to his safety. This is enough to put the defendants on notice of what they are accused of. *See Simpson v. Nickel*, 450 F.3d 303, 305–06 (7th Cir. 2006). It may be that some or even all of the defendants had no involvement in placing Sherman in the same unit as Miller. But if that is the case, the defendants are free to attest to that fact after the pleading stage.

Miller also challenges the district court's decision to dismiss his claim that defendants Fisher and Stanbaugh conspired to aid Sherman in attacking him. The defendants argue and the district court agreed that Miller's conspiracy claim fails because his allegations do not show that the defendants reached an understanding to aid Sherman in attacking him. The gist of this argument is that the facts that Miller alleged to support his conspiracy claim—for example that Stanbaugh's office was near Fisher's—are meager. But Miller did not have to provide facts to support his conspiracy claim, other than to identify the parties, purpose, and approximate date of the conspiracy. *See Loubser v. Thacker*, 440 F.3d 439, 442–43 (7th Cir.), *cert. denied*, 126 S. Ct. 2944 (2006). Miller has done this. His complaint identifies the parties to the conspiracy as Stanbaugh and Fisher, the purpose as enabling Sherman to attack him, and the approximate date as between May and July of 2002.

For the above reasons, we find that the district court erred in dismissing Miller's complaint for failure to state a claim, and we VACATE and REMAND for proceedings consistent with this opinion.