**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois  60604**

Submitted March 3, 2010[*]
Decided March 4, 2010

**Before**

JOEL M. FLAUM, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 09-2450

| | |
|---|---|
| STANLEY FELTON, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Western District of Wisconsin. |
| | |
| *v.* | No. 08-cv-227-slc |
| | |
| PETER ERICKSEN, et al., | Barbara B. Crabb, |
| *Defendants-Appellees.* | *Chief Judge.* |

**O R D E R**

Wisconsin inmate Stanley Felton, who was formerly housed in the Green Bay Correctional Institution, brought suit under 42 U.S.C. § 1983 raising multiple constitutional claims against several Green Bay employees.  The district court dismissed most of the

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary.  Thus, the appeal is submitted on the briefs and the record.  *See* FED. R. APP. P. 34(a)(2)(C).

claims and defendants at initial screening, *see* 28 U.S.C. § 1915A, and later granted summary judgment to the remaining defendants. This appeal involves three of Felton's claims and only two of the original defendants. We affirm the judgment.

Prison administrators learned in January 2007 that a cadre of inmates was circulating a document cataloguing their many objections to conditions at Green Bay and discussing a proposed inmate work stoppage. Inmate informants said that the leaders, including Felton, had been meeting in the prison library. Several informants also reported that proposals to assault specific administrators had been discussed. Peter Ericksen, the security director at Green Bay and a defendant in this litigation, ordered Lieutenant William Swiekatowski, a guard at the prison, to investigate. Swiekatowski concluded that the informant reports were accurate.

Then in early February 2007 guards confiscated from an inmate's cell a copy of a document entitled "Prisoner Legal Memorandum." The first page includes instructions for circulating the document. Other pages characterize the work as a "group complaint" for submission through the prison's complaint system. The document lists roughly 30 issues with prison conditions or policies and incorporates a request that, if no progress should be made on these issues, inmates be permitted to stop working, first for 30 days and later for a longer period. The unnamed authors suggest that, in the event of a work stoppage, prison employees should take over the inmates' duties. This document was forwarded to Swiekatowski.

Two days after the document surfaced, the warden, William Pollard, transferred Felton and five others to the state's highest-security prison and imposed a lockdown at Green Bay because of the perceived risk of violence. Afterward Swiekatowski issued a conduct report accusing Felton of conspiring to assault staff and other inmates at Green Bay, *see* WIS. ADMIN. CODE § 303.12, conspiring to organize an inmate riot, *see id*. § 303.18, and distributing an "unauthorized petition," *see id*. § 303.20. Wisconsin prison regulations do not draw a completely clear line between group "complaints," which are permitted, and group "petitions," which are not. But complaints, whether group or individual, must be limited to a single issue and may not include threatening or abusive language. WIS. ADMIN. CODE § 310.10. At his disciplinary hearing Felton objected to the prison's reliance on statements from informants, but the disciplinary committee (which included Patrick Brant, the other remaining defendant on appeal) credited those statements and found him guilty of the conspiracy charges, though not the charge of distributing an unauthorized petition. As punishment the committee imposed 360 days of segregation.

Felton, who is black, responded with this lawsuit. As relevant here, he claimed that (1) the "Prisoner Legal Memorandum" was a permissible group complaint and that its

confiscation violated his First Amendment right to seek redress of his grievances, (2) he was punished in retaliation for his exercise of that right, and (3) his transfer violated his right to equal protection because the white member of the cadre was not transferred. In granting summary judgment, the district court concluded that the undisputed evidence established that the circulating document was a prohibited group petition; that its confiscation was reasonably related to a legitimate penological interest, *see Turner v. Safely*, 482 U.S. 78, 89-90 (1987); that Felton's retaliation claim failed because he could not show that he was disciplined for participating in protected activity; and that Felton's equal protection claim failed because he produced no evidence to show that he was similarly situated to the two inmates who were not transferred to the higher-security prison.

In this court Felton contends that it was error to conclude that the confiscation of the "Prisoner Legal Memorandum" did not violate his First Amendment rights. The district court analyzed this argument under *Turner* and, after weighing the factors set out in that decision, concluded that the confiscation was related to a legitimate penological interest. But we can bypass review of that assessment because this appeal concerns only Ericksen, the security director, and Brant, a member of the disciplinary committee that found Felton guilty, and neither of them had anything to do with the *seizure* of the document. The document was found in another inmate's cell and was confiscated by a guard who was never a party to this litigation. And because liability under § 1983 requires a showing of personal involvement, *see Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (citing *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986)); *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001), the absence of any evidence linking these two defendants to the seizure is enough to resolve the First Amendment claim as against them.

Felton also argues that his retaliation claim should have survived summary judgment. Once again, however, there is no evidence of personal involvement. Felton alleged that he was given the conduct report because he helped draft the "Prisoner Legal Memorandum" as a means of seeking redress for grievances about prison conditions. *See Pearson v. Welborn*, 471 F.3d 732, 740 (7th Cir. 2006) (explaining that prisoner grievances are protected by the First Amendment). But Swiekatowski, not these defendants, authored the conduct report, and it is not reasonable to infer that either defendant shared any improper motive with Swiekatowski simply because Ericksen was the security director and Brant served on the disciplinary committee. Moreover, Felton introduced no evidence suggesting that the confiscated document or the issues it discusses were motivating factors behind the actions of these defendants or anyone else. *See Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). And though it is true that Felton was accused of circulating an "unauthorized petition," he was not punished for that conduct. Rather, he was found guilty of conspiring to assault staff and other inmates,

and conspiring to provoke an inmate riot. Those charges stemmed, not from the confiscated document, but from the investigation that already was underway before the document was found. That investigation uncovered Felton's role in organizing the planned uprising, and despite his contention that the evidence against him was suspect because it was drawn primarily from confidential informants, such evidence has long been permitted in prison disciplinary proceedings. *See Whitford v. Boglino*, 63 F.3d 527, 535 (7th Cir. 1995); *McCollum v. Miller*, 695 F.2d 1044, 1048 (7th Cir. 1982). And the statements used against Felton were corroborated, as required by WIS. ADMIN CODE § 303.81.

Last, Felton challenges the dismissal of his equal-protection claim regarding his transfer. But here again, he presented no evidence that Ericksen and Brant had anything to do with the transfer. That decision was made by Warden Pollard, who was dismissed from the case at screening and was not named as an appellee in Felton's notice of appeal. Ericksen did admit that he agreed with the warden's decision, but that admission does not support an inference that he advocated the transfer. And as to the warden, even if Felton intended to challenge his dismissal, Felton offered nothing to establish that he was similarly situated to a white inmate who was not transferred. *See Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005); *Chavez*, 251 F.3d at 636. Seven inmates were issued conduct reports for the planned riot, six of them black. The defendants submitted evidence, which Felton does not dispute, that two of the inmates, one white and one black, were not transferred because they were not clinically cleared. That evidence does not suggest an improper racial motive.

The order of the district court is **AFFIRMED**.