**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 20, 2018[*]
Decided July 26, 2018

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 17-3255

| | |
|---|---|
| DELBERT HEARD, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 15-1439 |
| JOHN R. BALDWIN, et al., *Defendants-Appellees.* | James E. Shadid, *Chief Judge.* |

**O R D E R**

Delbert Heard, an Illinois prisoner, alleged that prison officials violated his Eighth Amendment rights by following a policy of assigning two maximum-security inmates to one cell. According to *Rhodes v. Chapman*, 452 U.S. 337, 347–52 (1981), double-celling inmates in cells about the size of Heard's (60 square feet) is not per se

---

[*] The defendants were not served with process in the district court and are not participating in this appeal. We have agreed to decide this case without oral argument because the appellate brief and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

unconstitutional. So the district court assessed whether Heard had alleged that the defendants placed him with another inmate who they knew posed a specific threat to Heard's safety. Because the court correctly ruled that Heard did not allege such knowledge, we affirm.

This is our second time reviewing Heard's complaint. When the case started several years ago, the district court dismissed the complaint at screening. *See* 28 U.S.C. § 1915A. Heard sued the warden and former warden at Pontiac Correctional Center, as well as the Director of the Illinois Department of Corrections, alleging that double-celling engenders violence among inmates at Pontiac. He attached press releases from the governor's office, one of which said that double-celling "significantly" increases the risk of inmate attacks. He also included articles about prison murders, as well as affidavits from inmates about tension, fighting, and the general dangers of double-celling, both mental and physical. The district court dismissed the suit because Heard did not allege that the defendants disregarded a specific threat to his safety.

We recruited a lawyer to assist Heard in his initial appeal. We also invited the defendants to file a statement of position, even though they had not been served with process in the district court. In response to this invitation, defendants conceded that Heard was entitled to an opportunity to show the district court whether (and how) double-celling at Pontiac had harmed him. We then summarily remanded to the district court to afford Heard that opportunity.

On remand, Heard had two opportunities to amend. He twice filed revised complaints that repeated allegations about the general risks inherent in double-celling inmates. He alleged, for example, that double-celling leaves an inmate "vulnerable to his cellmate's assault because there are no guards armed or unarmed in the cell," so eventually "nature will take its course" and "violence will ensue." Heard added that he has "beat the crap out of every gangbanging cellmate that has attacked me," though he does not say how often these fights occur. He also attached a 10-year-old grievance that he filed when housed at Stateville Correctional Center. In that grievance he reported that he told correctional officers about the repeated attacks from one cellmate, but the officers did nothing and the assaults continued. From these allegations, Heard concludes that the defendants are "deliberately disregarding a known substantial risk of serious harm" from double-celling at Pontiac. The district court again dismissed the suit and denied Heard's motion for relief from the judgment. It reasoned that Heard never alleged that any defendant knew about a specific threat to his safety from a cellmate at Pontiac before an attack occurred.

On appeal, Heard argues that the district court applied a "heightened" pleading standard when dismissing his complaint. But the district court appropriately analyzed whether Heard alleged that his cell assignment created a substantial risk of harm to him individually and that prison officials knew about and ignored the risk. *See Farmer v. Brennan*, 511 U.S. 825, 838, 844 (1994); *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc); *Gevas v. McLaughlin*, 798 F.3d 475, 480–81 (7th Cir. 2015). Prison officials do not violate the Eighth Amendment by failing to stop inmate-on-inmate violence unless they know about and disregard a substantial, impending risk of violence from the attacker. *See Riccardo v. Rausch*, 375 F.3d 521, 525–29 (7th Cir. 2004); *see also Duran v. Elrod*, 760 F.2d 756, 760 (7th Cir. 1985) (observing that double bunking could violate the Constitution if "in a particular case" it was known to cause violence); *Smith v. Fairman*, 690 F.2d 122, 124–26 (7th Cir. 1982) (reversing district court's ruling that double-celling at Pontiac violated the Eighth Amendment; record did not show substantial violence).

In Heard's three complaints and two appellate briefs, he never asserts that Pontiac officials disregarded any recent attack, or threatened attack, on him from a cellmate. The only allegation that he makes about threats or attacks that *he* faced and that officials disregarded occurred 10 years ago. And those were attacks by one cellmate at a *different* facility. Heard has not alleged that since then any official was notified about a specific threat to his safety at Pontiac before the threat materialized.

Heard replies that the defendants know about the risks to him individually because, he alleges, violence occurs throughout Pontiac's double-celled prison, thus putting *all* cellmates, including him, at risk of attack. We may assume that Pontiac officials know about the general risk of violence there and that they thus know that Heard too faces some risk of harm. Nevertheless, Heard has not adequately alleged that the risk of harm to him is substantial. A substantial risk is "so great" that it is "almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005). Heard alleges that intra-cell fights around him have occurred, but not when or how often. Fights that occur around him are matters within his knowledge. But because Heard does not say anything about their timing or circumstances, he does not plausibly allege that the risk of a serious attack on him is "almost certain to materialize."

We recognize that Heard alleges a legal conclusion that the risk of attack is "substantial," but "legal conclusions can provide the framework of a complaint" only if "supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Heard has had several opportunities to advance those factual allegations, and he has not done so.

AFFIRMED