NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 1, 2022
Decided November 16, 2022

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 21-1389

| | |
|---|---|
| STEVEN ZIRKO,<br>    *Plaintiff-Appellant,*<br><br>    *v.*<br><br>KAREN RABIDEAU, *et al.*<br>    *Defendants-Appellees.* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.<br><br>No. 16-cv-10996<br><br>John J. Tharp, Jr.,<br>*Judge.* |

**O R D E R**

The Eighth Amendment's prohibition on cruel and unusual punishment brings with it the affirmative duty for prison officials to protect prisoners from violence at the hands of other inmates. A correctional officer violates that duty by acting with deliberate indifference to an objectively serious risk to the prisoner's health and safety. These principles find straightforward application in this appeal.

Steven Zirko claims that Officer Joel Shaw violated his Eighth Amendment rights by failing to protect him from violence at the hands of his cellmate, Patrick Palaggi. But the evidentiary record developed during discovery does not show that Officer Shaw had the information necessary to give him actual knowledge of any risk that Palaggi

might have posed to Zirko. The district court rightly recognized, therefore, that Officer Shaw could not have acted with deliberate indifference to such a risk. This leaves us to affirm the district court's entry of summary judgment for Officer Shaw.

## I

Because this appeal rises from a motion for summary judgment, we take our own fresh look at the record and construe the facts in the light most favorable to Zirko, the nonmoving party. See *LaBrec v. Walker*, 948 F.3d 836, 839 (7th Cir. 2020). Here is what the record shows:

In 2015 Zirko was an inmate at Stateville Correctional Center. He started sharing a cell with Palaggi that spring, and their relationship deteriorated toward the end of the year after Zirko—who is, in his own words, "something of a jailhouse attorney"—refused to help Palaggi review his criminal records. Zirko did so because he did not want "to have anything to do with" Palaggi after learning that he had sexually assaulted and murdered a young boy. Palaggi then threatened Zirko, saying that he would "beat [Zirko] to within an inch of [his] life" if Zirko told anyone about Palaggi's offenses. Palaggi threatened Zirko on several other occasions, about ten times in total.

Zirko does not remember when Palaggi first threatened him, only that it happened sometime in late 2015. Soon after, in November or early December, Zirko told Officer Shaw that Palaggi had threatened to beat him within an inch of his life. Officer Shaw dismissed Zirko's report, directing him to "deal with [his] own problems."

At least a month later, on January 10, 2016, Palaggi assaulted Zirko early one morning while Zirko was still asleep. Palaggi hit Zirko multiple times in the face, and these blows caused Zirko to lose vision in his right eye. Zirko required two surgeries to restore his vision, though his right eye remains photosensitive to this day.

Zirko sued Officer Shaw, as well as several other correctional employees, under 42 U.S.C. § 1983 for violating his Eighth Amendment rights. The district court granted the defendants' motion for summary judgment. Zirko now appeals, challenging the grant of summary judgment with respect to Shaw alone.

## II

The Supreme Court has explained that the Eighth Amendment requires prison officials to protect prisoners from violence at the hands of other prisoners. See *Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994). But the Court has also instructed that not

"every injury suffered by one prisoner at the hands of another [ ] translates into constitutional liability for prison officials." *Id.* at 834. Rather, prison officials who do not protect one inmate from violence at the hands of another may be found liable under the Eighth Amendment only if two requirements are met. *First*, the prisoner must have been exposed to a risk of objectively serious harm. *Second*, the prison official must have had actual knowledge of that risk and responded with deliberate indifference. See *LaBrec*, 948 F.3d at 841; see also *Farmer*, 511 U.S. at 837–38.

The evidence as viewed in the light most favorable to Zirko suffices to show that he faced a risk of objectively serious harm. See, *e.g.*, *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005) (holding that "a beating suffered at the hands of a fellow detainee … clearly constitutes serious harm"). But Zirko's burden does not end there, for the evidence must also permit a jury to find that Officer Shaw knew of that risk.

A prison official's awareness of a "specific, repeated, imminent, and plausible threat" to a prisoner's safety can, by itself, establish actual knowledge for purposes of an Eighth Amendment claim. *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). Consider, for example, what happened in *Gevas*. David Gevas told prison guards that another inmate had repeatedly threatened to stab him, and he specified that he was threatened because he had been labeled a snitch. See *id.* at 481. We held that this was enough to defeat summary judgment because "a jury reasonably could infer" that the prison officials, based on the information they had available, knew Gevas "faced a serious risk of substantial harm." *Id.*

Likewise, in *LaBrec*, Matthew LaBrec told prison officials that he did not feel safe around his cellmate. See 948 F.3d at 840. He explained that his cellmate had been "acting very unstable" and "displaying very erratic behavior," which "identified the basis for [his] belief" that his cellmate posed an objectively serious threat. *Id.* at 840, 844. That allegation, plus a later "specific description of the abnormal behavior" and other corroborating evidence about his cellmate's disciplinary record, made LaBrec's report plausible enough "to allow a jury to infer that those circumstances evidence[d] a real threat of harm." *Id.* at 844, 846. Summary judgment was therefore inappropriate. See *id.* at 846–47.

Even construing the evidence in the light most favorable to Zirko, there is not enough in the record to show that Officer Shaw had actual knowledge of a specific threat against Zirko that was repeated, imminent, or plausible. Unlike the situations in *Gevas* and *LaBrec*, where both plaintiffs provided context for their complaints, the record shows that Officer Shaw only knew one thing in late 2015: Palaggi had threatened to

beat Zirko within an inch of his life. Zirko's report was specific in that he named Palaggi as the person making the threat. But without more information, Officer Shaw had no way of knowing why Palaggi would have made such a threat. Nothing in the record suggests that Zirko told Officer Shaw about his brief stint of legal work for Palaggi, which could have provided essential context for making the reported threat more plausible and believable.

Nor does the record show that Officer Shaw had any awareness that Palaggi repeated his threats in the weeks leading up to the altercation on January 10. Had Zirko reported that more threats followed the first, or had he even repeated his concern on more than one occasion, that could have bolstered the credibility of his initial claim. Instead, as time went by—indeed, at least a month—after Zirko spoke to Officer Shaw, any threat conveyed by his one-off report became less imminent and less plausible.

Everyone agrees that Zirko's injuries are tragic. But a reasonable jury could not conclude that, with such limited information available to him, Officer Shaw was deliberately indifferent to an objective risk to Zirko's health or safety. On this record, the law requires that we AFFIRM the district court's grant of summary judgment for Officer Shaw.