In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-3049

MEANITH HUON,

*Plaintiff-Appellant,*

*v.*

NICK DENTON, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 CV 3054 — **John J. Tharp**, **Jr**. *Judge.*

ARGUED MAY 31, 2016 — DECIDED NOVEMBER 14, 2016

Before EASTERBROOK and WILLIAMS, *Circuit Judges*, and
YANDLE, *District Judge.**

WILLIAMS, *Circuit Judge.* Meanith Huon sued the website
Above the Law for implying that he was a rapist in an article
published on the same day he was acquitted of rape. When

---

* Of the Southern District of Illinois, sitting by designation.

another website, Jezebel (which was owned by Gawker at the time), reported on the lawsuit in an article entitled, "Acquitted Rapist Sues Blog for Calling Him Serial Rapist," Huon added Gawker to the lawsuit. He accused Gawker of defamation, false light invasion of privacy, and intentional infliction of emotional distress with regard to (i) the article's headline, (ii) its description of Huon's criminal trial and subsequent complaint against Above the Law, and (iii) certain comments posted by a number of anonymous third-party users (at least some of whom Huon claimed were Gawker employees). The district judge granted Gawker's motion to dismiss as to all of Huon's claims, and later denied him leave to file a fifth amended complaint. Huon appeals both decisions.

We conclude that the district judge correctly rejected Huon's defamation claim as to the article. The title can be construed innocently when viewed with the rest of the article as a whole, and the article's text fairly reported on both Huon's criminal trial and his initial complaint against Above the Law. In addition, the district judge did not err in denying Huon leave to file a fifth amended complaint, since Huon had ample opportunity to cure any deficiencies.

However, we reverse and remand the district judge's rejection of Huon's defamation claim as to the third-party user comments. Huon adequately alleged that Gawker helped create and develop at least some of the comments, and one of the comments constitutes defamation under Illinois law. We also reverse and remand the district judge's rejection of Huon's false-light and intentional-infliction claims, which were dismissed against Gawker based solely on the rejection of his defamation claims. Since part of his defamation claim

can proceed, so too can his false-light and intentional-infliction claims.

## I.  BACKGROUND

In July 2008, Plaintiff Meanith Huon was charged with criminal sexual assault in connection with a sexual encounter he had with Jane Doe. Huon pleaded not guilty, claimed that the encounter was consensual, and was acquitted by a jury. On the day Huon was acquitted, the legal website Above the Law (ATL) published an article entitled, "Rape Potpourri" (ATL article). The article discussed two "rape stories," one of which concerned Jane Doe's allegations and Huon's opening statement at his criminal trial. At some point after its initial publication, the ATL article was updated to note that Huon was acquitted.

One year after publication of the ATL article, Huon filed suit against ATL, alleging defamation, intentional infliction of emotional distress, and false light invasion of privacy. Several days later, the website Jezebel published an article entitled, "Acquitted Rapist Sues Blog for Calling Him Serial Rapist" (Jezebel article). The article superimposed Huon's 2008 mugshot onto the ATL article and briefly explained the circumstances of Huon's criminal trial and subsequent lawsuit against ATL. The article's title was later changed to read, "*Man Acquitted of Sexual Assault* Sues Blog for Calling Him Serial Rapist" (emphasis added), but otherwise remained the same. The Jezebel article generated over 80 comments from anonymous third-party users.

Huon amended his complaint in response to the publication of the Jezebel article, adding several new allegations and nearly a dozen new defendants, including Irin Carmon,

the Jezebel article's author; Gawker Media, Jezebel's then-owner; and Nick Denton, Gawker's founder (Gawker Defendants[1]). After Huon amended his complaint several additional times to cure certain jurisdictional defects, the Gawker Defendants moved to dismiss Huon's fourth amended complaint.

The district judge granted the motion in full. He rejected Huon's defamation claims as to the third-party user comments, finding insufficient allegations that Gawker employees had actually authored the comments, and concluding that the Communications Decency Act protects online publishers like Gawker from third-party comments. The judge also dismissed Huon's defamation *per se* claim, finding that the Article's headline was protected by the innocent construction rule and its text by the fair report privilege, and concluded that Huon had failed to plead the requisite special damages to maintain his defamation *per quod* claim. In addition, the judge dismissed Huon's false-light and intentional-infliction claims, noting that the failure of his defamation claims was dispositive. The district judge later denied Huon's motion to reconsider and for leave to file a fifth amended complaint. This appeal followed.[2]

---

[1] Following oral argument, we were notified that Defendants Gawker Media LLC and Nick Denton had separately filed petitions for bankruptcy protection under Chapter 11. Counsel for both Defendants tells us that the automatic stays in both bankruptcy proceedings have been modified so as to permit us to render a decision. We proceed accordingly.

[2] The ATL Defendants separately moved to dismiss Huon's fourth amended complaint. After the district judge granted their motion in part and denied it in part, the ATL Defendants and Huon settled. The ATL Defendants are not parties on appeal.

## II. ANALYSIS

We review de novo the district judge's grant of the Gawker Defendants' motion to dismiss for failure to state a claim. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). A complaint need only contain enough factual content to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2009). While "detailed factual allegations" are not required, the complaint must contain more than mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). We review the complaint in the light most favorable to Huon and accept all well-pleaded facts as true. *Tamayo*, 526 F.3d at 1081.

### A. Jezebel Article's Title and Content Defamation Claim Properly Dismissed

A statement is defamatory under Illinois law if "it tends to harm a person's reputation to the extent that it lowers that person in the eyes of the community or deters others from associating with that person." *Tuite v. Corbitt*, 866 N.E.2d 114, 121 (Ill. 2006). The *per se* designation applies if the statement's "defamatory character is obvious and apparent on its face and injury to the plaintiff's reputation may be presumed." *Id.* A statement will usually constitute defamation *per se* if it falls into one of five categories; the only one at issue here concerns "statements imputing the commission of a crime." *Id.*

On appeal, Huon contends that two aspects of the Jezebel article constituted defamation *per se*: (1) the headline and adjacent graphic containing his mug shot, to which the district

judge applied the innocent construction rule; and (2) the article's description of the criminal trial and subsequent civil suit, to which the judge applied the fair report privilege. We consider each issue in turn.[3]

### 1. Innocent Construction Rule Applies to Headline and Graphic

A statement that is defamatory *per se* will not be actionable "if it is reasonably capable of an innocent construction." *Green v. Rogers*, 917 N.E.2d 450, 463 (Ill. 2009). Under this rule, a court must give the defendant's words their natural and obvious meaning, after having considered "both the substance of defendant's alleged statements and the context in which they allegedly were made." *Id.* at 464. "[I]f a statement is capable of two reasonable constructions, one defamatory and one innocent, the innocent one will prevail." *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 925 (7th Cir. 2003) (citing *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1302 (Ill. 1996)). Nevertheless, "when the defendant clearly intended and unmistakably conveyed a defamatory meaning, a court should not strain to see an inoffensive gloss on the statement." *Green*, 917 N.E.2d at 463.

Here, Huon maintains that the Jezebel article's headline, "Acquitted Rapist Sues Blog For Calling Him Serial Rapist," is defamatory because it imputes to him the commission of a crime (rape), and is not subject to an innocent construction.

---

[3] Huon's fourth amended complaint also alleges defamation *per quod*. But since Huon does not press this claim on appeal, we consider it forfeited. *See, e.g., Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 386 (7th Cir. 2012); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991).

According to Huon, the most reasonable meaning of the headline is that Huon has committed rape at least once, and that the word "acquitted," by itself, does not controvert this false insinuation.

We need not decide whether the headline itself defamed Huon because, even if it did, it is subject to an innocent construction. As the Gawker Defendants correctly note, headlines must be considered alongside the accompanying article and not in isolation. *See, e.g.*, *Harrison v. Chi. Sun-Times, Inc.*, 793 N.E.2d 760, 772 (Ill. App. Ct. 2003) ("As a general rule in applying the innocent construction rule, a newspaper headline and the text of the article to which it refers are to be considered as one document and read together as a whole."); *accord Solaia Tech., LLC v. Specialty Pub. Co.*, 852 N.E.2d 825, 846 (Ill. 2006); *Seith v. Chi. Sun-Times, Inc.*, 861 N.E.2d 1117, 1127 (Ill. App. Ct. 2007); *cf. Tuite*, 866 N.E.2d at 127–28 (examining allegedly defamatory statements in the context of the entire book in which they were published); *Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1217 (Ill. 1996) (examining allegedly defamatory word in magazine article alongside the adjacent sentences).

Huon argues that "[h]eadlines alone may be enough to make libelous *per se* an otherwise innocuous article," but the small handful of cases he relies on are unhelpful. All of them involve the laws of states other than Illinois, and many are distinguishable on their facts insofar as the allegedly defamatory front-page headline was not next to the underlying article. *See Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1083–84 (9th Cir. 2002) (emphasizing that "the magazine is displayed for sale in plastic wrapping, making the cover the key to what a reader can expect to find inside the magazine"); *Kaelin v.*

*Globe Commc'ns Corp.*, 162 F.3d 1036, 1041 (9th Cir. 1998) (concluding that a reasonable jury could find that the magazine article "was too far removed [17 pages] from the cover headline to have the salutary effect that [defendant] claims"). Here, in contrast, the complaint indicates that the headline and article were directly adjacent to one another.

The content of the underlying Jezebel article makes clear that the only instance of alleged rape was the one Huon was acquitted of. Indeed, one need only read the first sentence to see that this is so: "A Chicago man who was acquitted on a sexual assault charge is suing the legal blog Above The Law for implying that he's a serial rapist." And two paragraphs later, after having discussed Huon's acquittal, the article explains that ATL "*mistakenly* believes that news accounts of the same incident are different incidents that should have tipped the woman off that Huon was a serial offender." (emphasis added).

Huon also contends the graphic containing his mugshot and the phrases "Above the Law" and "Rape Potpourri" constitutes defamation *per se*. We disagree. Above the Law was the name of the website that Huon had sued, "Rape Potpourri" was the headline of the ATL article, and the mugshot illustrated the subject matter at issue. So the innocent construction rule applies to the Jezebel article's headline and graphic.

### 2. Fair Report Privilege Applies to Discussion of Criminal Trial and Civil Lawsuit

Under Illinois law, a defamatory statement is not actionable if it falls within the fair report privilege, which applies to statements that are "complete and accurate or a fair

abridgment of [an] official proceeding." *Solaia Tech., LLC v. Specialty Pub. Co.*, 852 N.E.2d 825, 843–44 (Ill. 2006). Illinois courts have repeatedly stressed the importance of a robust privilege, as it "promotes our system of self-governance by serving the public's interest in official proceedings, including judicial proceedings." *Id.* at 842; *see also, e.g., Lulay v. Peoria Journal-Star, Inc.*, 214 N.E.2d 746, 747–48 (Ill. 1966) ("The right to speak and print about such actions of government is well established; denial of this right would be a serious infringement of both State and Federal constitutional guarantees of free speech and press.").

A report constitutes a fair abridgment if it conveys "a substantially correct account" to readers. *Solaia Tech.*, 852 N.E.2d at 844–45 (citation omitted). Because the summary of a legal proceeding "is bound to convey a somewhat different impression than the … proceeding itself," an abridgment is typically unfair only if it "significantly change[s] the defamation appearing in the governmental or public proceeding." *O'Donnell v. Field Enters., Inc.*, 491 N.E.2d 1212, 1217 (Ill. App. Ct. 1986). A determination "is made by comparing the gist or sting of the alleged defamation in the official report or proceedings with the gist or sting in the news account." *Harrison v. Chi. Sun-Times, Inc.*, 793 N.E.2d 760, 773 (Ill. App. Ct. 2003). Contrary to Huon's contention, the fair report privilege typically raises a question of law, not a question of fact, and is not concerned with the defendant's alleged subjective intent. *E.g., Solaia Tech.*, 852 N.E.2d at 842–43; *Missner v. Clifford*, 914 N.E.2d 540, 551 (Ill. App. Ct. 2009).

Huon argues that the privilege should not apply to the following sentence from the Jezebel article concerning his criminal trial: "Huon's version was that it was a consensual

encounter, and partly on the strength of the bartender's testimony that the woman had been drinking and asked where to go to have fun, the jury believed him." It bears noting, however, that the district judge did not apply the fair report privilege to this sentence, concluding instead that it did not amount to defamation. *See Huon v. Breaking Media, LLC*, 75 F. Supp. 3d 747, 768 (N.D. Ill. 2014) (statement "bolster[ed] rather than defame[d] his reputation" because it suggested that "the jury found reason to discredit Jane Doe's claims and therefore acquitted Huon of the charges").

We agree with the Gawker Defendants that the fair report privilege applies to the Article's references to consent and the bartender's testimony, since they appear to accurately capture the gist of what occurred at the trial. Huon's counsel emphatically and repeatedly referenced consent during opening statements, and the multiple facts that Huon points to as grounds for his acquittal, taken together, dovetail with a consent-focused defense strategy. In addition, Huon makes no attempt to explain how the statement about the bartender's testimony mischaracterizes what she actually said at trial.

We cannot, however, easily dismiss Huon's argument about the Article's statement about the jury's beliefs—especially since there is no indication as to what swayed any particular juror's vote. The Gawker Defendants insist that the statement is nothing more than a non-actionable opinion, but we are dubious. The statement does not appear to be the kind of subjective claim that courts applying Illinois law have typically viewed as non-actionable, *see, e.g.*, *Wynne v. Loyola Univ.*, 741 N.E.2d 669, 676 (Ill. App. Ct. 2000) (explaining that non-actionable statements typically contain no "ob-

jectively verifiable factual assertion"), and the article's context more closely resembles a news article than an editorial. However, we need not decide the issue, since we agree with the district judge that the statement could not have injured Huon's reputation in the eyes of the public. (If anything, the statement improved it.)

Huon also maintains that the Jezebel article failed to capture the gist of his lawsuit against the ATL Defendants in two ways. First, he faults the article for omitting the fact that the ATL Defendants called him a rapist on the same day he was acquitted. However, we fail to see how omitting this fact, by itself, caused the gist to be inaccurate. The Jezebel article accurately conveyed the crux of Huon's complaint against the ATL Defendants—that ATL erroneously indicated Huon had committed multiple sexual assaults, and that he was acquitted in the only case brought against him—and Huon makes no attempt to explain why omitting the temporal relationship between Huon's acquittal and publication of the ATL article misrepresents the nature of his lawsuit. In essence, Huon complains that the Jezebel article omitted a factual allegation of only modest significance; yet without such omissions, abridgments of legal proceedings could never occur.

Second, Huon faults the Jezebel article for republishing the ATL article's defamatory comments. *See Brennan v. Kadner*, 814 N.E.2d 951, 970 (Ill. App. Ct. 2004) ("The republisher of a defamatory statement made by another is himself liable for defamation even if he gives the originator's name."). But the Jezebel Article did not simply parrot the rape-based allegations in the ATL article; rather, it summarized Huon's criticism of these allegations, and, if anything, indicated that the

criticism was founded, insofar as it noted that Huon was "acquitted" and that the ATL article was based on a "mistaken[] belie[f]." So the fair report privilege applies to the Jezebel article's statements regarding Huon's criminal trial and subsequent lawsuit against ATL.

## B. District Judge Erred in Dismissing Defamation Claim Involving Third-Party User Comments

### 1. Communications Decency Act Not Applicable

The Communications Decency Act states, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1); *see also id.* § 230(f)(3) (defining "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service"). This means that for purposes of defamation and other related theories of liability, a company like Gawker cannot be considered the publisher of information simply because the company hosts an online forum for third-party users to submit comments. *See, e.g., Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671–72 (7th Cir. 2008) (concluding that Craigslist "is not the author of the ads and could not be treated as the 'speaker' of the posters' words, given § 230(c)(1)"); *Doe v. GTE Corp.*, 347 F.3d 655, 658–59 (7th Cir. 2003) (explaining that "entities that know the information's content do not become liable for the sponsor's deeds," and noting that § 230(c) preempts contrary state law).

A company can, however, be liable for creating and post-ing, inducing another to post, or otherwise actively partici-pating in the posting of a defamatory statement in a forum that that company maintains. *See Chi. Lawyers' Comm.*, 519 F.3d at 671; *see also Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1166–67 (9th Cir. 2008) (en banc) (concluding that a website was not a "passive transmitter of information provided by others" but instead helped develop the information by "requiring subscribers to provide the information as a condition of accessing its ser-vice, and by providing a limited set of pre-populated an-swers"); *FTC v. Accusearch Inc.*, 570 F.3d 1187, 1199–1200 (10th Cir. 2009) (concluding that a website developed the in-formation by "solicit[ing] requests" for the information and then "pa[ying] researchers to obtain it").

Huon argues that the Act is inapplicable here because Gawker's comments forum was not a mere passive conduit for disseminating defamatory statements. Rather, Gawker itself was an information content provider, insofar as the Gawker Defendants: (1) "encouraged and invited" users to defame Huon, through selecting and urging the most defa-mation-prone commenters to "post more comments and con-tinue to escalate the dialogue"; (2) "edited," "shaped," and "choreographed" the content of the comments that it re-ceived; (3) "selected" for publication every comment that appeared beneath the Jezebel article; and (4) employed indi-viduals who authored at least some of the comments them-selves.

The district judge concluded that these arguments failed to plausibly state a claim for relief. But we see nothing farfetched about Huon's factual allegations—in particular,

his contention that one or more of the comments were authored by Gawker employees. Rather than asserting one or two standalone factual allegations concerning Gawker's control over comments, Huon's fourth amended complaint devotes over four pages to detailing Gawker's alleged activities. Critically, the complaint hints at why Gawker employees might have anonymously authored comments, alleging that increasing the defamatory nature of comments can increase traffic to Gawker's websites, which can in turn enhance the attractiveness of Gawker's commenting system for prospective advertisers. In doing so, the complaint quotes several passages from a Reuters article that explains precisely how Gawker was planning to "monetize" comments, and why advertisers might find this commenting system appealing.

The Gawker Defendants may well be correct in contending that none of Huon's various allegations actually occurred, but this doesn't mean that the allegations are so implausible as to warrant dismissal under Rule 12(b)(6). *See Twombly*, 550 U.S. at 555 (explaining that a complaint need only plead enough facts to "raise a right to relief above a speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (footnote and citations omitted)); *id.* at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." (citation and internal quotation marks omitted)). Discovery is the proper tool for Huon to use to test the validity of his allegations, and if he is unable to marshal enough facts to support his claim the Gawker Defendants can move for summary judgment. Moreover, to the extent Gawker and other publishers are concerned that our

ruling will result in a flood of frivolous lawsuits, we remind them that sanctions are available under Federal Rule of Civil Procedure 11 if it is determined that a plaintiff's factual allegations were plead with improper purpose, are frivolous, or were known by plaintiff's counsel to be lacking any factual basis.

The Gawker Defendants proffer several arguments in support of the Act's application here, but none are availing. For example, they argue that Huon's allegations amount to the kind of "traditional publishing activities" that other courts of appeals have found warrant protection under the Act. *See, e.g.*, *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) (Under § 230, "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred."); *accord Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 18–20 (1st Cir. 2016); *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 407 (6th Cir. 2014). But we need not wade into that debate, since Huon has adequately pleaded that at least some of the allegedly defamatory comments were authored by Gawker employees—thus making Gawker an "information content provider" under § 230(f).

In addition, the Gawker Defendants argue that Huon's allegation that the Defendants induced the comments is belied by Gawker's terms of use for commenters, which, among other things, prohibited the posting of "harassing, defamatory or libelous material." But the mere fact that a terms-of-use statement exists does not establish that all comments complied with it.

The Gawker Defendants also argue that Huon failed to plead facts plausibly establishing that Gawker authored the allegedly defamatory comments. As discussed above, however, there is nothing implausible about this allegation, and we reject the Gawker Defendants' invitation to interpret Rule 8, *Twombly*, and *Iqbal* as requiring more. Indeed, potentially meritorious claims could be prematurely and improperly dismissed if we were to accept the Gawker Defendants' position, since the information necessary to prove or refute allegations like Huon's is typically available only to defendants. *Cf. Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005) ("Where pleadings concern matters peculiarly within the knowledge of the defendants, conclusory pleading on 'information and belief' should be liberally viewed." (citation and internal quotation marks omitted)).

### 2. One Comment Is Defamatory

The fact that Huon has plausibly alleged that Gawker employees created the defamatory comments, by itself, does not allow him to press forward with his defamation *per se* claim; the comments must actually constitute defamation. We have already discussed the general principles of defamation *per se* under Illinois law. But given the fact that the statements at issue were shared in a comments forum, a brief discussion of the distinction between actionable factual assertions and non-actionable opinions is in order.

Opinions that do not misstate actual facts are protected by the First Amendment and thus non-actionable. *E.g.*, *Madison v. Frazier*, 539 F.3d 646, 653 (7th Cir. 2008) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)); *Moriarty v. Greene*, 732 N.E.2d 730, 739 (Ill. App. Ct. 2000)). Illinois courts consider the following three factors in differentiating

between factual assertions and opinions: "(1) whether the statement has a precise and readily understood meaning; (2) whether the statement is verifiable; and (3) whether the statement's literary or social context signals that it has factual content." *J. Maki Const. Co. v. Chi. Reg'l Council of Carpenters*, 882 N.E.2d 1173, 1183 (Ill. App. Ct. 2008). Notably, "[w]ords that are mere name calling or found to be rhetorical hyperbole or employed only in a loose, figurative sense have been deemed nonactionable." *Pease v. Int'l Union of Operating Eng'rs Local 150*, 567 N.E.2d 614, 619 (Ill. App. Ct. 1991); *see also Milkovich*, 497 U.S. at 20 (statements that are not reasonably understood as stating actual facts should not be actionable, in order to ensure that "public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation").

Here, most—but not all—of the comments do not constitute defamation *per se*. Some comments are not defamatory because they do not directly concern Huon himself, but instead relate to acquittal and guilt more generally. For example:

> SarahMc:
>
>> Just because a man is acquitted of rape does not mean he did not commit rape. That a jury would decide "not guilty" does not magically erase what he did--if he did, in fact, rape someone. The vast majority of rapists are never convicted of rape. Does that make them not rapists?
>
> Dinosaurs and Nachos, girlfriend!:

> Innocent until proven guilty is a widely misunderstood concept. It basically means that the mere fact that someone is charged with a crime is not itself evidence that the person committed a crime.
>
> Then you go to court. In court, there will be evidence presented. This evidence is where an actual, legal determination is made. Nobody is declared "innocent" in a court of law, they are found guilty or not guilty.
>
> "Not guilty" is absolutely not the same thing as "innocent" from a legal standpoint. Those words do not mean the same thing in the world of law. "Innocent until proven guilty" is merely a concept for laymen to try to keep their non-lawyer brains from jumping to (nonlegal) conclusions.

Other comments amount to hyperbole that cannot be reasonably understood as asserting objectively verifiable facts. For example:

> SorciaMacnasty:
>
> Nevermind [sic] "serial rapist," he sounds like a foreal [sic] crazy person.

Still other comments, while referencing certain alleged facts surrounding Huon's criminal trial, do not directly accuse him of committing a crime and are better classified as non-actionable opinions—specifically, a rhetorical decrying of general notions of "rape culture" and "victim blaming." For example:

cool_as_KimDeal:

> Well shit! I didn't know kicking back at a bar and asking where I should go to have fun meant that I hereby consent to any and all sexual activity, with anybody, with this bartender here as my witness. Can I sign away my right to consent here on my bar tab? Okay, great.

JadeSays:

> Weird. I didn't know "where do I go to have fun" meant the same thing as "where do I go to get raped." It's great that that jury made that clear to me, otherwise I could get myself in some sticky situations like apparently accidentally begging to be raped.

> AWE. SOME.

rachel723 (in reply to JadeSays's comment):

> you know it's women like you who don't understand the rules that make the rest of us ladies look bad.

> I'm glad you learned before you actually got raped not to complain now if you do, you were asking for it!!

> /sarcasm

HeartRateRapid:

> Yea, all those crazy bitches going to the cops and lying about being raped. Except

that false reports for stolen cars are more common. False rape reports make up less than 3% of all reported rapes, and as I'm sure you know, it horrendously underreported.

Only the following comment qualifies as defamation *per se* under Illinois law:

vikkitikkitavi:

She jumped out of a moving car, leaving her shoes and purse behind and ran barefoot through a cornfield and pounded on a stranger's door to help her?

Fuck this "he's been acquitted" noise. He's a rapist alright, so we may as well call him one.

This comment unequivocally accuses Huon of committing a crime (rape), and nothing in its context suggests it is more appropriately viewed as mere name-calling or stylistic exaggeration. So Huon's defamation *per se* claim as to this comment may proceed.

## C. False Light Invasion of Privacy and Intentional Infliction of Emotional Distress Claims Improperly Rejected

The district judge rejected Huon's false-light and intentional-infliction claims based solely on the dismissal of Huon's defamation claims. It appears that this tethering is consistent with Illinois law. *See Madison v. Frazier*, 539 F.3d 646, 659 (7th Cir. 2008) (When an "unsuccessful defamation *per se* claim is the basis of [a plaintiff's] false-light claim, his false-

light invasion of privacy claim fails as well."). But that reasoning no longer holds, since Huon's defamation *per se* claim as to one third-party user comment was improperly dismissed. And because the false-light and intentional-infliction claims have not been adequately briefed on appeal, we reverse the dismissal of those claims and remand for further proceedings.

### D. No Error in Denying Motion for Leave to File Fifth Amended Complaint

Finally, Huon argues that the district judge erred in denying him leave to file a fifth amended complaint to cure certain alleged deficiencies relating to his defamation *per quod* claim. Federal Rule of Civil Procedure 15(a)(1) instructs that courts should freely give plaintiffs leave to amend their complaints "when justice so requires." However, district judges have "broad discretion" to deny leave to amend, "where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008). "We review a district court's denial of leave to amend for abuse of discretion and reverse only if no reasonable person could agree with that decision." *Schor v. City of Chi.*, 576 F.3d 775, 780 (7th Cir. 2009).

Huon has not satisfied this high bar. The district judge explained that in each of his previously amended complaints, Huon had added new factual and legal allegations, added or removed defendants, or revised certain statements in an attempt to cure jurisdictional deficiencies. In addition, the judge emphasized that the modifications in the proposed complaint could have been made earlier, since they purport

to cure deficiencies highlighted in the Defendants' motions to dismiss Huon's second amended complaint. Why Huon did not modify his third or fourth amended complaints accordingly remains a mystery. So the district judge did not err in finding that Huon had ample opportunity to plead his claims, and justice does not require an additional bite of the apple. *See Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 347–48 (7th Cir. 2012) (finding no abuse of discretion in denying leave to amend where plaintiffs had already had three opportunities to state a claim); *Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1322–23 (7th Cir. 1998) (same).

## III. CONCLUSION

The judgment of the district court is AFFIRMED in part and REVERSED in part, and the case is REMANDED for proceedings consistent with this opinion.