In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 21-2458

MARVIN THOMAS,

*Plaintiff-Appellant*,

*v.*

THOMAS J. DART, *et al.*,

*Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17-cv-04233 — **Mary M. Rowland**, *Judge*.

_____

ARGUED FEBRUARY 10, 2022 — DECIDED JULY 12, 2022

_____

Before MANION, KANNE\*, and JACKSON-AKIWUMI, *Circuit Judges*.

MANION, *Circuit Judge*. While incarcerated in Cook County Jail, Marvin Thomas was assaulted by another inmate. Seventeen months later, he filed suit under 42 U.S.C. § 1983 and

_____

\* Circuit Judge Kanne died on June 16, 2022, and did not participate in the decision of this case, which is being resolved under 28 U.S.C. § 46(d) by a quorum of the panel.

other federal statutes against Sheriff Thomas J. Dart, Cook County, and other Jail personnel, including corrections officers to whom he allegedly reported the inmate's threat of violence. Ultimately, all of these claims were either dismissed or resolved against Thomas on summary judgment.

This appeal is not about those claims. Years after litigation began, Thomas sought to amend his complaint for a third time to name as defendants intake clerks who screened him when he entered the Jail. He alleged the clerks purposely omitted from intake forms that he suffered from mental health problems and that this omission led to his assault. The district court denied the motion to amend, concluding it would be improper to add the new defendants. Thomas challenges the denial of his motion to amend and asserts that the district court's ruling demonstrates its bias against him.

Because the amendment Thomas sought would have been futile, and because no bias against Thomas can reasonably be inferred from the district court's adverse rulings, we affirm.

## I. Background

In June 2015, Thomas was arrested and transported to the Jail. Although released from custody the following month, he was indicted and reincarcerated in September 2015. On January 5, 2016, he was injured when another pretrial detainee assaulted him. He was treated and transferred to a different facility about three weeks later on January 29.

Thomas filed the original complaint in this case in June 2017. The complaint alleged that, prior to his initial arrest, Thomas had been diagnosed with PTSD stemming from an assault he had suffered years earlier. In October 2015, after his reincarceration, he told corrections officers guarding the unit

in which he was housed that another inmate had threatened him. Although the corrections officers told Thomas he would be moved, they took no action. A few months later, Thomas was attacked by this inmate. As a result, Thomas suffered a split lip and a dislocated shoulder. He was treated and housed in a segregation unit before being transferred out of the Jail. The complaint asserted liability against numerous individuals. As relevant here, Thomas sued unnamed corrections officers guarding his Jail unit for violating his constitutional rights when they failed to protect him from assault by the other inmate.

Thus began a series of motions to dismiss, judicial rulings, and amended complaints. Meanwhile, discovery on some of the claims began. After Thomas filed a second amended complaint that still had not named the corrections officers more than two years after the suit was initiated, the district court sensed the need for pellucid direction. In December 2019, it advised Thomas that he could "amend the complaint only to identify the individual defendants involved in the failure to protect claim" and that the court would "not entertain any other amendments."

Despite the district court's clarity, Thomas did not follow its instructions. In January 2020, he sought leave to file a third amended complaint, which forms the crux of the present appeal. He finally named three Jail corrections officers who guarded his housing unit and purportedly failed to protect him from being assaulted. But Thomas also attempted to bring six new claims against two new defendants: Jail clerks who conducted intake evaluations when Thomas arrived at the facility in June 2015 and again in September 2015.

Based on records obtained during discovery, Thomas contended that the clerks altered intake forms to obscure his mental health issues, even though he informed them of his PTSD when being processed. Specifically, Thomas asserted that the June 2015 intake clerk entered "No" despite Thomas's affirmative response to Question 15a: "Do you have a developmental disability or mental health issue that might affect your safety in custody?" The September 2015 clerk accurately recorded Thomas's "Yes" response to Question 15a, but the clerk entered answers to other intake inquiries in a way that obscured Thomas's report of mental issues. (The parties debate this last point, but we accept all allegations for present purposes.)

These facts, Thomas said, meant his original failure-to-protect theory was "incorrect." The corrections officers, it turns out, "did *not* know about the plaintiff's PTSD, because the intake clerks took steps, unbeknownst to the plaintiff, to conceal that information" from the officers. The proposed third amended complaint added three section-1983 claims against each intake clerk, alleging failure to protect from physical injury, violation of the Eighth Amendment's ban on cruel and unusual punishment, and violation of due process under the Fourteenth Amendment. Each count was predicated on the clerks "ignoring" or "changing" Thomas's answers on the intake forms regarding PTSD, "resulting in the correctional officers being unaware of the plaintiff's special need for protection."

The district court denied the motion to amend. The court thought Thomas's newest theory was inconsistent with positions he had taken since the suit was filed years earlier. In the circumstances, the district court concluded, justice did not

require that Thomas be allowed to add the defendants and counts, and such an addition would only cause further delay.

Thomas filed a fourth amended complaint that complied with the court's December 2019 instructions. Another motion to dismiss duly followed. Thomas asked the district court to reconsider its order denying the addition of the intake clerks. He argued that he could not have asserted liability against the intake clerks until he received the purportedly falsified intake forms as part of discovery in October 2019.

Again, the district court was not persuaded that the amendment was justified. Thomas's new allegations, the court thought, did not plausibly suggest how the intake clerks were involved in the alleged failure to protect Thomas from a fellow inmate's attack. Nor was there any allegation that corrections officers had reviewed or been shown the intake forms. Thus, the court reasoned, there was no plausible link between the contents of the intake forms and the assault. In fact, the court noted, the September 2015 intake form *did* document that Thomas suffered from mental health issues. So, even if a corrections officer guarding Thomas's unit had looked at his intake form, he would have seen that documentation.

Eventually, all of Thomas's operative claims were either dismissed or resolved against him on summary judgment, including the failure-to-protect claims against the corrections officers guarding his Jail unit. This appeal followed.

## II. Analysis

The scope of Thomas's appeal is limited. He does not challenge the district court's disposition of the claims against Sheriff Dart, the county, or the corrections officers. Rather, he

focuses on the court's denial of his motion to amend to add the intake clerks as defendants.[1] He challenges both the propriety of the district court's denial of leave to amend and the court's impartiality in making that decision. We address each challenge in turn.

## A. Leave to Amend

Generally, a party has the right to "amend its pleading once as a matter of course." FED. R. CIV. P. 15(a)(1). "In all other cases," however, "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). Here, there is no dispute that Thomas required leave before he could amend his complaint to add the intake clerks as defendants.

A court "should freely give leave when justice so requires." *Id.* Although generously phrased, this rule still leaves a district judge with "broad discretion" to deny leave to amend, such as where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies; where undue prejudice to the defendants would result; or where amendment would be futile. *Huon v. Denton*, 841 F.3d 733, 745 (7th Cir. 2016). We review a district court's denial of leave to amend a complaint for abuse of discretion. *Id.*

---

[1] Although Thomas's opening brief in this court was unclear, he clarified at oral argument that all counts against the clerks were predicated on their alleged suppression of his mental health information on the intake forms. That being so, Thomas does not explain how the proposed claims citing the Eighth and Fourteenth Amendments allege anything other than a failure to protect. Consequently, we address only the failure-to-protect claims. *See White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) (undeveloped arguments are waived on appeal).

The district judge outlined several considerations leading her to conclude that amending the complaint to bring in the intake clerks was not appropriate. The parties vigorously dispute many issues, such as whether the proposed amendment was brought in bad faith or after unreasonable delay, whether it prejudiced the defense, whether it sought to join new defendants improperly, and whether it fell outside the proper limitations period. Because this court may affirm a district court's judgment on any basis supported by the record, *Knutson v. Village of Lakemoor*, 932 F.3d 572, 576 (7th Cir. 2019), we need not wade into most of these debates. Instead, we resolve this appeal on what seems to us the simplest basis: Leave to amend was properly rejected because it would have been futile.

Amendment is futile when it seeks to add a new claim that does not allege a viable theory of liability. *See Gandhi v. Sitara Capital Mgmt., LLC*, 721 F.3d 865, 868–70 (7th Cir. 2013). Because futility—essentially failure to state a claim—is a legal question, our abuse-of-discretion review includes *de novo* consideration of the issue. *Sandy Point Dental, P.C. v. Cin. Ins. Co.*, 20 F.4th 327, 335 (7th Cir. 2021). As explained below, amendment would have been futile because Thomas could not plausibly allege that reasonable officers in the intake clerks' positions would have known about a specific substantial risk to Thomas at the time of their purportedly wrongful conduct.[2]

---

[2] After the June 2015 intake screening, Thomas was released. He was evaluated again by a different intake clerk in September 2015 when he began the period of incarceration during which he was assaulted. Given this sequence, the issue of the initial intake clerk's liability might also raise causation questions. For present purposes, we can ignore those questions.

"Incarcerated people have a clearly established right to be free from physical harm inflicted by others in the institution," and under section 1983 they may sue jail or prison staff who fail to protect them. *Kemp v. Fulton County*, 27 F.4th 491, 494 (7th Cir. 2022). Such a claim brought by a pretrial detainee arises under the Due Process Clause of the Fourteenth Amendment, whereas a convicted inmate's claim arises under the Eighth Amendment's ban on cruel and unusual punishment. *Id.* at 495. Under either amendment, a plaintiff bringing a failure-to-protect claim traditionally had to allege that a defendant was subjectively aware of a substantial risk of serious harm to the plaintiff. *Id.* at 495–96.

But that standard changed after *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). There, the Supreme Court held that a pretrial detainee asserting an excessive-force claim did not need to allege that a defendant was subjectively aware that the force he used was excessive. Rather, he need only allege that the force was objectively unreasonable. *Id.* at 396–97. We have concluded that *Kingsley*'s objective-unreasonableness standard applies to other Fourteenth Amendment claims by pretrial detainees, including failure-to-protect claims. *Kemp*, 27 F.4th at 495.

Now, to state a viable failure-to-protect claim under the Fourteenth Amendment, a pretrial detainee must allege: (1) the defendant made an intentional decision regarding the conditions of the plaintiff's confinement; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate the risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved, making the consequences of the defendant's

inaction obvious; and (4) the defendant, by not taking such measures, caused the plaintiff's injuries. *Id.* at 496 (adopting the analysis from *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)).

The third element requires an allegation that a specific defendant "was on notice of a serious risk of harm" to the detainee. *Id.* at 497. Put another way, it must be plausibly alleged that a reasonable officer in a defendant's circumstances would have appreciated the high degree of risk the detainee was facing. *Id.*; *see also Westmoreland v. Butler County*, 29 F.4th 721, 730 (6th Cir. 2022) ("A pretrial detainee need not prove subjective elements about an officer's actual awareness of the level of risk, but he must prove the officer was more than merely negligent; the officer must have acted with reckless disregard in the face of an unjustifiably high risk of harm." (internal quotation marks omitted)); *Castro*, 833 F.3d at 1072 ("The jury here found that the officers knew of the substantial risk of serious harm to Castro, which necessarily implies that the jury found that a reasonable officer would have appreciated the risk."). In *Kemp*, for example, we explained that there was no evidence that defendants "should have been on notice of a substantial risk to Kemp's safety" because "he never reported his verbal disagreement" with—"or the ensuing threats" from— the three inmates who later attacked him and, "prior to the beating, all four men had cohabited peacefully for months." 27 F.4th at 497.

Thomas does not attempt to argue that the intake clerks were on notice of the risk posed by the particular inmate who ultimately assaulted him. Nor would such an allegation be plausible, since the first threat by that inmate—the first sign

of his danger to Thomas—occurred in October 2015, after the clerks' involvement with Thomas ended.

But Thomas nevertheless maintains that he can allege a viable failure-to-protect claim under the following theory: (1) the intake clerks suppressed information about his mental condition and caused him to be placed in the general population rather than a medical unit; (2) being in the general population put him at substantial risk of suffering serious harm because his mental condition made him "vulnerable"; (3) the clerks "did not take reasonable measures to abate that risk by not over-riding [sic] the answers [he] had given … about his mental health"; and (4) by placing him in the general population, the clerks caused his injuries.

These allegations still do not state a viable claim. Under the second element, Thomas alleges that he was at substantial risk of being assaulted because he had PTSD and was housed in the Jail's general population. And this is the risk Thomas suggests—though does not clearly assert—under the third element that reasonable officers in the intake clerks' positions would have appreciated.

Without more, however, simply being housed in the Jail's general population, even while suffering from PTSD, is not a particular enough risk in the failure-to-protect context. The unfortunate reality is that jails and prisons are dangerous places inhabited by violent people. *See Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). The constitutional expectation "is that guards act responsibly under the circumstances that confront them," not that they anticipate every potential danger facing a detainee. *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004). As the Supreme Court cautioned in *Kingsley*, an assessment of objective reasonableness must be made "on

the facts and circumstances of each particular case" and "from the perspective of a reasonable officer on the scene, including what the officer knew at the time." 576 U.S. at 397 (internal quotation marks omitted); *accord Kemp*, 27 F.4th at 495.

To be sure, the specific risk a reasonable officer would appreciate need not be uniquely associated with the plaintiff or his attacker. The risk can be based on "a victim's particular vulnerability" (even though the identity of the assailant is not known before the attack), or it can be based on "an assailant's predatory nature" (even though the identity of the victim is not known before the attack). *Brown v. Budz*, 398 F.3d 904, 915 (7th Cir. 2005); *see also id.* (noting that a risk can come from "a single source or multiple sources"). But either way, the risk must be somehow "specific to a detainee, and not a mere general risk of violence." *Id.* at 909. Thomas cannot assert an appreciable risk of harm based solely on his placement in the Jail's general population because the "general risks of violence in prison" confront virtually every detainee. *See Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000).

Nor has Thomas offered a plausible reason why the intake clerks should have been on notice that placing him in the Jail's general population *with PTSD* created a substantial risk. He does not suggest that his having PTSD provoked, encouraged, or made more likely his assault by another Jail inmate. And he does not suggest that the inmate who assaulted him had a known propensity for violence against detainees like Thomas. This case, then, resembles *In re Estate of Rice*, 675 F.3d 650 (7th Cir. 2012). There we held that a valid failure-to-protect claim was not alleged when a mentally ill detainee was assaulted by another inmate over the detainee's hygiene problem because jail personnel—though aware of the hygiene problem—"had

no notice that he was at risk of assault because of that problem." *Id.* at 670.

Finally, Thomas asserts that the intake clerks were on notice of the substantial risk he faced having PTSD while in the general population because the Prison Rape Elimination Act (PREA) classified him as (in his words) "vulnerable" and because Cook County Department of Corrections General Order 24.14.8.0 mandated that he be screened for potential placement in a medical unit. We are unpersuaded.

In enacting PREA, Congress found that incarcerated individuals "with mental illness are at increased risk of sexual victimization." 34 U.S.C. § 30301(3). Disturbing as this finding is, we do not see how it helps Thomas satisfy the pleading requirement. Put aside that a bare "increased risk" does not necessarily correlate to a "substantial risk." *See Brown*, 398 F.3d at 911 (suggesting that a "substantial risk" is one that, at the very least, is likely to materialize). Such broad and generalized legislative findings cannot be the basis of risk in the failure-to-protect context where, we reiterate, "the facts and circumstances of each particular case" are the critical focus. *Kemp*, 27 F.4th at 495. As for General Order 24.14.8.0, Thomas did not provide a copy, and we are unable to locate one. But whatever the order's specific provisions, a section-1983 claim must be predicated on constitutional violations, not on violations of departmental regulations or practices. *Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017). A failure-to-protect claim under the Fourteenth Amendment requires an allegation that a defendant should have been aware of a specific substantial risk, not that a defendant should have been aware of or followed a general administrative rule.

Simply put, the alleged circumstances in this case would not have suggested to reasonable officers in the intake clerks' positions that Thomas was at substantial risk of being assaulted. Thus, Thomas could not state viable failure-to-protect claims against the intake clerks and his attempt to do so was futile. The district court properly denied leave to file the third amended complaint.

### B. Purported Judicial Bias

There remains only Thomas's suggestion of bias. He relies on 28 U.S.C. § 455(a), which says a judge must disqualify herself from any proceeding in which her "impartiality might reasonably be questioned." (Thomas does not invoke any of the specific bases for recusal outlined in § 455(b).) Whether there is an appearance of partiality is assessed from the perspective of an objective, well-informed, thoughtful observer. *United States v. Barr*, 960 F.3d 906, 919 (7th Cir. 2020). Thomas did not raise the issue of disqualification below, but we will consider a judicial-disqualification argument on appeal even if it was not presented to the district court. *Fowler v. Butts*, 829 F.3d 788, 794–95 (7th Cir. 2016).

In Thomas's view, bias was evident here because his attempt to bring new claims against new defendants was "ignored and dismissed without as much as a single mention in the court's orders." As a factual matter, two minute orders refute this assertion. But the main stumbling block for Thomas is a legal one. By itself, an adverse judicial ruling does not provide a valid basis for questioning a judge's impartiality. *Liteky v. United States*, 510 U.S. 540, 555 (1994); *United States v. Martin*, 21 F.4th 944, 945 (7th Cir. 2021); *see also United States v. Perez*, 956 F.3d 970, 975 (7th Cir. 2020) ("In addition, a judge's 'ordinary efforts at courtroom administration' or docket

management are 'immune' from claims of bias or partiality." (quoting *Liteky*, 510 U.S. at 556)). Errant decisions are grounds for appeal, not for seeking a judge's recusal. *Liteky*, 510 U.S. at 555.

Thomas's attempt to glean bias from language in some of the district judge's summary-judgment determinations is just the same argument in a different guise. And it, too, fails. For instance, he characterizes as "cavalier" the court's determination that "no reasonable jury" could have found in his favor on an issue. That is not disdainful rhetoric; that is the legal standard for granting summary judgment. *See, e.g.*, *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 457 (7th Cir. 2020). A "hypersensitive or unduly suspicious person" might sense partiality in these words, but an objective and thoughtful observer could not. *Barr*, 960 F.3d at 920.

The district judge, despite Thomas's ever-changing complaint, managed this case with evident fairness.

### III. Conclusion

The district court's denial of leave to file the third amended complaint was not improper, and it is certainly not a valid basis to question the judge's impartiality. The judgment is AFFIRMED.