In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 23-1655

LORENZO DAVIS,

*Plaintiff-Appellant,*

*v.*

BILLY ROOK and CHRISTOPHER GIBSON,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:18-cv-01153-JES-JEH — **James E. Shadid**, *Judge*.

———————————

ARGUED DECEMBER 12, 2023 — DECIDED JULY 12, 2024

———————————

Before SCUDDER, ST. EVE, and PRYOR, *Circuit Judges*.

SCUDDER, *Circuit Judge*. While awaiting trial at the McLean County Detention Facility in Illinois, Lorenzo Davis suffered serious eye injuries upon being attacked by fellow detainees. Invoking 42 U.S.C. § 1983, Davis sued two correctional officers on duty at the time of the attack, alleging that they violated the Due Process Clause of the Fourteenth Amendment by failing to protect him from the other detainees. The district court entered summary judgment for the officers, concluding that

the evidence, even when viewed in the light most favorable to Davis, did not permit a finding that either officer acted in an objectively unreasonable way. We agree and affirm.

**I**

**A**

Upon his arrival at the McLean County Jail in April 2016, Lorenzo Davis reported to F-Block, a maximum-security unit consisting of six single-occupant cells and a common area. Fellow detainees Wanyae Massey and Terrell Hibbler lost no time in interrogating Davis about his criminal charges, threatening to beat him if he refused to answer their questions. Davis's troubles continued the following morning, April 12, when several inmates stole his breakfast tray. He reported the incident to one of two officers on duty, also mentioning Massey's and Hibbler's threats and requesting transfer to another unit. The identity of that officer is unknown, as Davis remembers only that he spoke to the officer who gave him his breakfast tray.

Each morning brings with it an opportunity for the inmates to clean their cells. April 12 was no exception. After breakfast, Officer Christopher Gibson placed a bucket of cleaning supplies in F-Block's common area in accordance with standard procedure. Officer Gibson then left F-Block and walked to the recreation room to supervise the detainees there.

While Officer Gibson was in the recreation room, inmate Massey approached Davis in his cell and the two began to argue. In the course of the argument, Davis accused Massey of stealing from him, at which point Massey and Hibbler stepped into the common area, retrieved a broomstick and

mop from the area near the cleaning supplies, and then used both objects to beat Davis, causing serious eye injuries.

Officer Gibson learned about the fight when a hall worker entered the recreation room and announced that the detainees in F-Block were "fighting like gladiators." Officer Gibson could not abandon the recreation room, though, so he passed the F-Block keys to Officer Billy Rook, who rushed to Davis's cell and immediately called for assistance. Four or five additional officers responded, ultimately breaking up the fight and sending Davis to the medical unit.

## B

Davis sued Officers Gibson and Rook under 42 U.S.C. § 1983 for failing to protect him in violation of the Due Process Clause of the Fourteenth Amendment. Following discovery, the defendants moved for summary judgment. The district court granted the motion, concluding that the evidence did not permit the inference that a reasonable officer in the circumstances would have appreciated the risk that Massey and Hibbler posed to Davis's safety at the time of the attack. Nor, the district court continued, did Officer Rook have a duty to immediately break up the fight before waiting for other officers to arrive in response to the call for emergency help. The district court observed that "if it were otherwise, prisoners could [] initiate a sham fight so as to lure a guard in and overwhelm him."

Having resolved the merits of Davis's claim, the court declined to address the defendants' qualified immunity defense.

Davis now appeals.

**II**

We review the district court's grant of summary judgment by taking a fresh look at the facts and the law, drawing all reasonable inferences from the record in favor of Davis as the non-moving party. See *Tolan v. Cotton*, 572 U.S. 650, 656–67 (2014). We will affirm summary judgment if Davis "has failed to make a sufficient showing on an essential element" of his claim on which he carries the burden of proof—in short, if there is "no genuine issue as to any material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A

Pretrial detainees have a right to be free from physical harm inflicted by others in the institution. See *Kemp v. Fulton Cnty.*, 27 F.4th 491, 494–95 (7th Cir. 2022). This right derives from the Fourteenth Amendment's Due Process Clause, which prohibits any punishment meted out "prior to an adjudication of guilt in accordance with due process of law." See *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

The Fourteenth Amendment standard does not require a pretrial detainee to prove the defendant's subjective awareness of the risk of harm to establish liability. See *Kemp*, 27 F.4th at 497 (explaining that such a requirement "cannot be reconciled" with the Supreme Court's instruction in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015) to "pay careful attention to the different status of pretrial detainees" (internal quotations omitted)). The detainee must prove only that a reasonable officer under the circumstances would have appreciated the risk of harm to the detainee, and, from there, that the defendant acted in an objectively unreasonable way in addressing that risk. See *Echols v. Johnson*, --- F.4th ----, 2024 WL 3197540

at *1 (7th Cir. June 27, 2024); *Kemp*, 27 F.4th at 497; *Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022).

Do not read us to be saying that the defendant's personal knowledge plays no role in the objective reasonableness analysis. Far from it: the defendant's knowledge of the *factual circumstances* informs whether a reasonable officer under the same circumstances would have developed subjective or personal awareness of the *risk of harm* to the plaintiff. Or, as the Supreme Court put the point in *Kingsley*, the district court must assess the objective reasonableness of the defendant's action or inaction "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." 576 U.S. at 397.

To demonstrate that a reasonable officer in the defendant's shoes would have "put the puzzle pieces together" about the risk of harm, the detainee must show that the defendant actually received "all the information about a potential health or safety risk." See *Kemp*, 27 F.4th at 496 (citing *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (*en banc*)). It is, after all, impossible to put a puzzle together without the pieces. See *Kemp*, 27 F.4th at 497 (affirming summary judgment in part because the plaintiff "admitted that he never reported [to the defendant] his verbal disagreement with [the other detainees] or the ensuing threats to Jail employees"); *Echols*, 2024 WL 3197540 at *5 (affirming jury trial verdict for defendants who had "no reason to believe" under the circumstances that another detainee would assault the plaintiff); *Thomas*, 39 F.4th at 842 (applying *Kingsley* and *Kemp* and reiterating that "an assessment of objective reasonableness must be made on the facts and circumstances of each particular case" (internal quotation marks omitted)).

In short, we do not assume that a reasonable officer is omniscient. Instead, the first step in evaluating whether the defendant should have appreciated the risk of harm is to take inventory of the factual information that he received.

B

Turning to the summary judgment record before us, we agree with the district court that the evidence does not permit the inference that Officers Gibson or Rook acted unreasonably by not doing more to protect Lorenzo Davis.

*Officer Christopher Gibson*: The claim against Officer Gibson fails because a reasonable officer with his knowledge of the circumstances in F-Block on the day of the fight had no reason to suspect that inmates Wanyae Massey and Terrell Hibbler posed a risk to Davis. Without awareness of the risk of harm to Davis, a jury could not find that Officer Gibson acted unreasonably in failing to take steps to mitigate it.

The record contains no evidence suggesting, for instance, that Officer Gibson knew about the verbal threats to Davis's safety or his request to be moved to another cell block. Officer Gibson testified in his deposition that he never spoke with Davis about any threats or risks presented by other detainees. Nor, for his part, was Davis able to say that he ever spoke to Officer Gibson about his problems with the other detainees. Rather, all Davis could do was speculate that he *may* have complained to Officer Gibson on the morning of the attack. On this evidence, we see no basis for a jury to conclude that a reasonable officer positioned like Officer Gibson would have suspected imminent violence between Davis and the other detainees.

We also see no way a jury could find that Officer Gibson failed to protect Davis merely by placing cleaning supplies in F-Block. The supplies by themselves presented no objectively perceptible risk of harm, especially when considering Officer Gibson's testimony that in his more than 26 years of correctional experience, he had never seen jail detainees wield mops or brooms at any time as weapons.

Davis insists that the district court's reliance on Officer Gibson's many years of experience and other bits of his personal knowledge shows that the district court rejected his failure-to-protect claim under an improper subjective standard. We disagree. The objective analysis mandated by *Kingsley* and our related precedent begins with the defendant's knowledge of the factual context and then asks whether a reasonable officer with that knowledge would appreciate the risk of harm and still engage in the same conduct. The district court charted that precise course of reasoning here by ascertaining "what [Officer Gibson] knew at the time" before concluding that a reasonable officer in his shoes would not have perceived the risk of assault to Davis. *Kingsley*, 576 U.S. at 397. A reasonable officer who had never seen cleaning supplies used as weapons in 26 years of correctional experience would have had no reason to suspect that Davis, of all inmates, would suddenly be attacked during the cleaning period on April 12 with a broomstick and mop.

*Officer Billy Rook*: We likewise agree with the district court that the evidence does not permit the inference that Officer Rook violated the Fourteenth Amendment based on his decision not to intervene immediately in the fight between Davis and the other detainees. Remember that the fight was fully underway when Officer Rook arrived at Davis's cell. By

waiting for back-up to arrive before intervening to break up the fight, he did what any other reasonable officer would do in the circumstances—exhibit "due regard" for his own safety in the first instance. See *Shields v. Dart*, 664 F.3d 178, 181 (7th Cir. 2011).

We have explained many times over that an officer may call for back-up before breaking up a fight. See, *e.g.*, *id.* (approving the defendant's decision not to "open the door to the day room to command the other detainees to stop the attack" and instead take "other steps to intervene by promptly calling for back-up and monitoring the fight from the secure area until other officers arrived"); *Giles v. Tobeck*, 895 F.3d 510, 514 (7th Cir. 2018) (explaining that it is "reasonabl[e]" to "call[] for back-up and wait[] for it to arrive, rather than jump into the fray" alone). A jury could not find that Officer Rook acted unreasonably when he waited for back-up assistance before injecting himself into the middle of the beatdown inmates Massey and Hibbler were inflicting on Davis.

Davis urges us to conclude that Officer Rook should have taken other steps to protect him, such as pounding on the cell door, yelling at Massey and Hibbler, or otherwise distracting the assailants. But it would be entirely speculative for a jury to conclude that these actions would have stopped the assault or made any difference at all.

For these reasons, we AFFIRM.